# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

THRUSH v. FULLHART.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1913.)

No. 1,170.

1. EVIDENCE (§ 340*)—CERTIFIED COPY OF RECORD—ADMINISTRATOR'S LIST.

Where, in an action for breach of marriage promise, it appeared that defendant had been one of the administrators of his father's estate, and a certified copy of a list of his father's personal property had been attested by the certificate of the administrators as correct, and it also appeared that defendant was entitled to an aliquot part of such estate, such appraisement was properly admitted in evidence to show defendant's financial condition.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1294–1301; Dec. Dig. § 340.*].

2. BREACH OF MARRIAGE PROMISE (§ 35*)—DEFENSES—LIMITATIONS—INSTRUCTIONS.

Where, in an action for breach of marriage promise, defendant testified that he broke off the engagement in a letter written plaintiff in June, 1907, and, on July 19th of the following month, plaintiff replied asking for a continuance of friendship only, such correspondence indicated an intention on defendant's part to break his promise to marry her, whether she consented or not, and there being no evidence of a subsequent promise on which suit could be brought, the statute of limitations against her right to sue for breach of promise began to run at that time, and it was error to refuse to charge that if the jury believed from the evidence that defendant wrote plaintiff in June, 1907, breaking off their engagement, they must find for defendant on his defense of limitations, whether plaintiff agreed to the breach or not, and to charge instead that if the jury believed that defendant wrote to plaintiff in June, 1907, breaking off their engagement, the action not having been brought within a year, they must find for defendant, provided they did not further find that the engagement had been renewed; there being no evidence of any new promise.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 51; Dec. Dig. § 35.*]

3. EVIDENCE (§ 271*)—SELF-SERVING DECLARATIONS—LETTERS.

In an action for breach of marriage promise, letters written by plaintiff to defendant nearly three months after the incident with which they were sought to be connected, and after she had consulted with counsel

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

210 F.—1

and had in contemplation a suit against him, and to which he did not reply, and containing declarations in her own interest, were inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1084; Dec. Dig. § 271.*]

In Error to the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Alston G. Dayton, Judge.

Action by Iva Lea Fullhart against William V. Thrush. Judgment for plaintiff, and defendant brings error. Reversed.

William MacDonald, of Keyser, W. Va. (Frank C. Reynolds, of Keyser, W. Va., on the brief), for plaintiff in error.

W. H. Griffith, of Keyser, W. Va. (Roscoe A. Heavilin, of Marion, Ind., on the brief), for defendant in error.

Before PRITCHARD and KNAPP, Circuit Judges, and CONNOR, District Judge.

KNAPP, Circuit Judge. This is an action for breach of promise of marriage. It was tried to a jury, and the defendant in error (hereinafter called the plaintiff) had a verdict on which judgment was entered. The plaintiff in error (hereinafter called the "defendant") prosecutes this writ to reverse the judgment against him.

The declaration of plaintiff is in the usual form. The defendant, in addition to the general plea of non assumpsit, filed two special pleas; one alleging that his promise to marry was void under the statute of frauds of West Virginia, the other alleging that plaintiff's cause of action was barred by the statute of limitations of that state.

The parties to the suit became engaged in the spring of 1894, when they were both students at Otterbein University, at Westerville, Ohio. The plaintiff was then upwards of 23 years of age, the defendant a year older. The defendant was preparing for the ministry, and plaintiff knew that he intended to take a theological course at Lane Seminary, Cincinnati, Ohio. He did in fact attend that institution during the three years following his graduation from Otterbein in June of the year named. The plaintiff testified that their marriage was to take place "as soon as defendant was able to be married," but she evidently understood that this would not be until he completed his studies and "was located in some employment." The record does not show definitely when or for what reason defendant abandoned his intention to become a minister, but it appears that after leaving the seminary in 1897 he was employed for about two years as a clerk in his brother's store at Piedmont, W. Va., and in 1899 returned to his father's farm near Burlington in that state, where he has since resided. His father was then advanced in years and in failing health. He died intestate in April, 1910, leaving a considerable estate which passed to his five sons and his widow, their stepmother.

At the time of their engagement the plaintiff lived at North Manchester, Ind., but some two years later removed to Marion, in that state, where she has continued to reside. She left Otterbein soon aft-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

er the engagement, and for a while was employed as a school teacher, but later became a stenographer, which has since been her occupation. During this time the defendant visited her on two occasions. The first was at Christmas, 1895, when she gave him her watch, which she says he was to return when he came to claim her as his bride. The other occasion was during the defendant's vacation in June, 1896, an account of which appears in the testimony. With these exceptions the parties did not see each other from the time they were students at Westerville until they met 18 years later at the trial of this action in September, 1912.

Throughout this long period, except perhaps the last year or two; there was a more or less frequent correspondence between the parties. Most of the letters appear to have been destroyed, but some which happened to be preserved were produced at the trial and are printed in the record. It is unnecessary to comment upon the contents of these letters except in connection with certain assignments of error which will be presently considered. On the 29th of November, 1911, the defendant married one Mary Whipp, and on the 4th day of June, 1912, this action was commenced.

The defense based upon the statute of frauds is without merit and needs but a word of mention. If it be granted that the statute applies to a contract to marry, and that this contract by its terms was not to be performed within a year after it was made, we are of opinion that the subsequent letters of defendant, which in effect acknowledged and ratified the agreement, constituted a promise in writing within the meaning and intent of the statute.

[1] On the trial of the action the plaintiff was allowed, against the objection of defendant, to introduce and read to the jury a certified copy of the appraisement of his father's estate, which was filed in the clerk's office of Mineral county in October, 1910. To the list of personal property and real estate was appended a certificate of the appraisers to the effect that the list of items with the value thereof was correct, and a further certificate of the administrators, of whom the defendant was one, that the list embraced all the property belonging to the estate. This appraisement was offered in evidence for the purpose of showing the defendant's financial condition and was admitted solely for that purpose.

We perceive no error in this ruling of the trial court. Evidence of the defendant's means and consequent ability to respond in damages is clearly admissible in actions of this kind, and we see no reason to doubt that it was competent to prove this defendant's financial condition, prima facie at least, by the official valuation of his father's estate, in which he had a known and definite interest. It may be, as claimed by counsel, that the introduction of this appraisement, with its long list of items, of the nominal value in the aggregate of more than $91,000, gave the jury an exaggerated impression of the amount of property which defendant inherited and which he then presumably possessed. But it was open to defendant to point out any items which were overvalued, or to show subsequent losses and depreciation, or to give independent proof of his actual financial condition. Having

failed to avail himself of the opportunity to rebut any inferences as to his present circumstances which might be drawn from the appraisement in question, he cannot now be heard to complain if the jury in fact based the amount of its verdict upon an excessive estimate of his pecuniary ability.

After the evidence was concluded, and before the arguments of counsel, the court gave to the jury certain instructions, five in number, which the plaintiff requested, and to each of which the defendant duly excepted. Without stating the various propositions submitted, or discussing the questions which they severally present, it is sufficient to say that in our judgment none of these instructions involves substantial error. Even if they be regarded as favoring the plaintiff's contention, we are not persuaded, in view of the pleadings and evidence, that they were incorrect or unwarranted.

[2] A different and more serious question arises from the refusal of the court to give the instruction requested by defendant, to which refusal exception was taken, and from the instruction afterwards given by the court of its own motion, with the consent of plaintiff, but over the objection of defendant; and, in order that this question may be determined on its merits, we pass by as unimportant the technical point that the instruction was not given in the order provided by the West Virginia statute. The instruction asked for and refused was this:

"The court instructs the jury that if they believe from the evidence that the defendant wrote to the plaintiff in June, 1907, breaking off their engagement, they must find for the defendant whether the plaintiff agreed thereto or not."

And the instruction in lieu thereof, given by the court of its own motion, was as follows:

"The court on behalf of the defendant instructs the jury that if they believe from the evidence that the defendant wrote to the plaintiff in June, 1907, breaking off their engagement, because of the statute of limitations and because this action was not instituted within one year thereafter, they must find for the defendant on the plea of statute of limitations filed in this cause; provided they do not find further from the evidence by circumstances and the relations of the parties that the engagement was in effect renewed."

It is conceded by plaintiff that, if the engagement to marry was terminated more than a year before this suit was commenced, the statute of limitations would bar recovery. The defendant testified that he broke off the engagement in a letter written to plaintiff in June, 1907, which was received shortly thereafter. Whether he did so or not was obviously the controlling fact in controversy. The letter itself was not produced, and its actual contents must be inferred from the testimony of the parties and their subsequent correspondence. The significant evidence in point is the answer of plaintiff on the 19th of July, the following month. There was an earlier acknowledgment, but in what terms does not appear. The later reply, on the date mentioned, is of considerable length, and discloses quite fully the state of mind and understanding of the plaintiff at that time. It is in part a plea for the continuance of friendship between them and further interchange of letters on that basis. Among other things, she says:

"How foolish it will be to deprive ourselves of this pleasure (meaning the pleasure of friendly correspondence) just because we cannot get married."

In another passage she repeats this idea, saying:

"Maybe we can get more pleasure out of a life devoted to correspondence than we could out of matrimony."

Again, she says:

"What I am interested in now is your friendship which I am only too glad to accept if that is all you have to give me—I will be satisfied with small favors."

This letter indicates not only that she no longer expected the defendant to marry her, but that she regarded his letter to her as intended to terminate their engagement. The fact that she urged his consent to further correspondence as friends seems otherwise not easy of explanation. In short, it is difficult to read the letter in question without believing that what the defendant had written to her was in substance and effect a refusal to keep his promise, that it was so understood by her, and that she then anticipated for the future no other than friendly relations.

Nor did anything afterwards take place, so far as this record discloses, which affords the slightest indication of a renewal of the engagement. Disregarding the point that no new promise is alleged, by way of replication or otherwise, and looking at the evidence in the light most favorable to the plaintiff, we are quite unable to discover any fact or circumstance which suggests that a broken promise had been renewed. Neither the testimony of plaintiff, the letters of defendant in 1909, the circumstances connected with the return of the watch, nor any other incident developed at the trial, permits an inference that the engagement formerly existing, if broken off by defendant in 1907, as he alleges, was again entered into by him, in effect or otherwise, at a subsequent date. The case was not tried on that theory, and there is nothing in the proofs to support the proposition.

We do not say that plaintiff was not entitled to go to the jury, under proper instructions, upon the issue here considered, namely, whether the engagement was broken at the time and in the manner asserted by defendant, for that question is not now presented. But we are of opinion, upon the pleadings and evidence before us, that the instruction asked for by defendant should have been given, and that the court's instruction in lieu thereof was also erroneous, for want of any basis in the proofs submitted, and because of its misleading import. The defendant contends that he canceled the engagement in June, 1907, nearly five years before this suit was commenced, and he relies upon the statute of limitations to defeat the plaintiff's action. The case on his part rests on this contention, and on her part, not on the renewal of a broken agreement, but on an agreement that remained unbroken until his marriage with another. It may be assumed, as plaintiff testifies, that she never released the defendant from his promise; but, if that promise was withdrawn or its fulfillment refused as and when the defendant alleges, the fact that she declined to release

him, or otherwise sought to hold him to his obligation, would not operate to prevent the running of the statute. The cause of action accrued when the breach of promise occurred, and unless suit were brought within a year thereafter the law invoked by defendant would bar recovery.

We are therefore persuaded that the instructions in question involved substantial error to the prejudice of defendant. The ruling asked for on his behalf was directly applicable to the case made by the pleadings and proofs, and correct in assuming that it was immaterial whether the plaintiff assented or not, if the jury found that the engagement was broken by defendant in his letter of June, 1907. The defendant was entitled to this instruction, and it ought not to have been refused.

The substituted instruction of the court appears to us clearly unwarranted. It is inconsistent with plaintiff's contention and without discoverable basis in the evidence. It was in effect a ruling that the jury, although believing that the promise sued on was broken five years before, might nevertheless find for the plaintiff upon the theory, which has no support but conjecture, of a later or renewed undertaking. That this was a misleading instruction, liable at least to improperly influence the verdict, seems hardly open to question. It certainly cannot be affirmed that it did not have that effect.

There is abundant authority for regarding such an instruction as reversible error. For example, in Breitling v. United States, 20 How. (61 U. S.) 252, 15 L. Ed. 900, Chief Justice Taney states the principle as follows:

"It is clearly error in a court to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered. The instruction presupposes that there is some evidence before the jury which they may think sufficient to establish the facts hypothetically assumed in the opinion of the court; and, if there is no evidence which they have a right to consider, then the charge does not aid them in coming to correct conclusions, but its tendency is to embarrass and mislead them. It may induce them to indulge in conjectures, instead of weighing the testimony."

Without multiplying citations, it is sufficient to refer to a comparatively recent case (J. W. Bishop Co. v. Dodson, 152 Fed. 128, 81 C. C. A. 346) in which this court sustained the refusal to give certain instructions, because they related "to matters not in issue in the case," and there was no basis for the contention. For the reasons above stated, we are constrained to hold that the errors under consideration require a reversal of the judgment.

[3] We are further of opinion that the plaintiff's letters of January 20 and 29, 1912, were improperly received in evidence. The declarations of a party in his own interest are not ordinarily admissible, and these letters seem to be essentially of that character. They cannot fairly be regarded as a part of the correspondence between the parties, for they are not in reply to anything defendant had written, nor were they answered by him. They were written nearly three months after the incident with which they are sought to be connected—the return of plaintiff's watch—and one of them certainly, the other apparently, after she had consulted with counsel and had in contempla-

tion a suit against defendant. The fact that he made no reply to these communications did not permit an inference of assent on his part to anything which plaintiff charged against him or claimed for herself, for the law is well settled that failure to answer a letter, under such circumstances as are here disclosed, cannot be regarded as an admission by the party to whom the letter is addressed. In our judgment, the letters in question are self-serving declarations which should have been excluded as irrelevant and incompetent.

The judgment should be reversed, and the case remanded.

Reversed.