## LEACH & COMPANY, INC. *v.* PEIRSON.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 78.   Argued October 27, 1927.—Decided November 21, 1927.

1. *Semble* that under the Conformity Acts, rules of evidence established by decisions of the highest court of the State apply to an action on contract between private parties in the District Court. P. 127.
2. A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove.   He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts.   P. 128.
3. A, having bought bonds of B through B's sales-agent, wrote B that the purchase was made upon the understanding that B would repurchase at the same price at A's request, and that he desired to avail himself of that privilege.   *Held* that B was under no duty to answer the letter and that the letter was inadmissible to prove the salesman's authority to make the agreement asserted. P. 128.

16 F. (2d) 86, reversed.

CERTIORARI, 273 U. S. 676, to a judgment of the Circuit Court of Appeals affirming a judgment recovered by Peirson from the petitioner on an alleged agreement to repurchase bonds sold by the latter to the former.

*Mr. Francis Rawle,* with whom *Mr. Joseph W. Henderson* was on the brief, for petitioner.

The trial court was bound, under the Conformity Acts, by the decisions of the highest court of Pennsylvania on rules of evidence.   *Bucher* v. *Cheshire Co.,* 125 U. S. 555; *Nashua Bank* v. *Anglo-Amer. Co.,* 189 U. S. 221; *Amer. Chem. Co.* v. *Hogan,* 213 Fed. 416; *Myers* v. *Moore Co.,*

279 Fed. 233; *Ex·parte McNiel,* 13 Wall. 236; *Davis* v. *Gray,* 16 Wall. 203; *Amer. Pub. Co.* v. *Sloan,* 248 Fed. 251; *Franklin Co.* v. *Luray Co.,* 6 F. (2d) 218.

By the uniform decisions of the highest court of Pennsylvania, an unanswered, self-serving letter is not admissible in evidence as proof of the truth of facts set forth in it. *Fraley* v. *Bispham,* 10 Pa. 320; *Holler* v. *Weiner,* 15 Pa. 242; *Dempsey* v. *Dobson,* 174 Pa. 122; *Kann* v. *Bennett,* 223 Pa. 36. All the authorities in all jurisdictions have held the same. *Lutcher Co.* v. *Knight,* 217 U. S. 257; *Packer* v. *United States,* 106 Fed. 906; *Rumble* v. *United States,* 143 Fed. 772; *Woolsey* v. *Haynes,* 165 Fed. 391; *Thrush* v. *Fullhart,* 210 Fed. 1; *Harris* v. *Egger,* 226 Fed. 389; *Morris* v. *Norton,* 75 Fed. 912; *Kumin* v. *Fine,* 229 Mass. 75; *Gray* v. *Kaufman,* 162 N. Y. 388; *Viele* v. *McLean,* 200 N. Y. 260; *Chicago* v. *McKechney,* 205 Ill. 372; *State* v. *Howell,* 61 N. J. L. 142; *Biggs* v. *Stueler,* 93 Md. 100; *Seevers* v. *Coal Co.,* 158 Ia. 574; *Bank* v. *McCabe,* 135 Mich. 479; *Hammond* v. *Beeson,* 112 Mo. 190; *Hill* v. *Pratt,* 29 Vt. 119; *Wiedemann* v. *Walpole,* [1891] 2 Q. B. 534; *Thomas* v. *Jones,* [1920] 2 K. B. 399; [1921] 1 K. B. 22. The rule is as old as the Roman law. *Scriptura . pro scribente nihil probat.* L. 10, D. XXII. 5. *Gaskill* v. *Skene,* 14 Ad. & El. (N. S.) 664; *Allan* v. *Peters,* 4 Phila. 78.

There is a lack of uniformity in the decisions of the various Circuit Courts of Appeals as to whether or not, under the Conformity Acts, the federal courts are, in the trial of a common law case, bound to follow the rules of evidence of the highest court of the State in which the trial is held. *Chicago &c. Ry.* v. *Kendall,* 167 Fed. 62; *du Pont Co.* v. *Tomlinson,* 296 Fed. 634; *West Tenn. Co.* v. *Shaffer Co.,* 299 Fed. 197; *Union Pac. R. R.* v. *Yates,* 79 Fed. 584. *Swift* v. *Tyson,* 16 Pet. 1, held that the federal courts in the trial of a common law case in New York were not bound by § 34 of the Judiciary Act of 1789

to follow the settled decisions of the courts of that State on a question of general commercial law. The case has been frequently followed and affirmed. It must be regarded as settled law. And the re-enactment of the section in the same words, carries with it the interpretation of the section which had been placed upon it before it was re-enacted.

But the scope of § 34 should not be further restricted under the authority of *Swift* v. *Tyson.* Section 34 provides that " the laws of the several states " shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. The opinion of Mr. Justice Story holds that " laws " covers only statutes and long established local customs having the force of laws. It can hardly be questioned that this decision would have been a surprise if it had been made fifty years before. In those early days, the only laws known (apart from statutes) were those which formed a part of the common law of the State. If lower federal courts were to be created, the common law of the State in which a trial was held was the only law by which they could be guided. There was no common law of the United States. So obvious was this that when the Judiciary Draft Bill was introduced in the Senate in 1789, it contained no provisions such as are now found in § 34. This section was added during the debate. It seemed unnecessary.

There was a very significant amendment in the section. The words " the statute laws of the several states " were stricken out and the words " the laws of the several states " were substituted. Charles Warren, 37 Harv. Law Rev. 49. In changing " statute law " to " laws " the amendment also struck out the words " their unwritten or common law now in use, whether by adoption from the common law of England, the ancient statutes of the same or otherwise." If Ellsworth had intended only that the

statutes of the several States should be rules of decision, he, apparently, would have retained " statute law " and taken out the reference to the " unwritten common law," but by changing " statute law " to " laws " he must have meant to use a more comprehensive word which should cover the unwritten common law of the several States, and therefore he omitted those words.

Even the Federalists had no idea of creating lower federal courts to administer a common law of their own. And the Anti-Federalists were originally strongly opposed to the creation of any federal courts. In fact, the Judiciary Act was a hard-fought compromise betwen the Federalists who would give the federal courts the full jurisdiction authorized in the Constitution and their opponents who were unwilling to create any lower federal courts. And in this compromise, the jurisdiction of the lower federal courts was extended to but little more than admiralty cases and cases of citizenship. A single case of the broad interpretation of the section need be given. *Simsims* v. *Irvine,* 3 Dall. 425.

The decision in *Swift* v. *Tyson, supra,* was, undoubtedly, a movement or trend towards the idea of nationalism, which, as Charles Francis Adams has said, began with Story, then Webster, and then the Nullification Proclamation. In those days, "questions of jurisdiction were questions of power as between the United States and the several states." Today the pendulum is swinging back to state rights, and it is here submitted that it will be wiser to strengthen rather than weaken, as Justice Story did, the command of § 34. See dissenting opinion in *B. & O. R. R.* v. *Baugh,* 149 U. S. 368.

*Mr. John A. Brown,* with whom *Mr. Henry P. Brown* was on the brief, for respondent.

The petitioner cannot raise in this Court a question of law not raised in the District Court nor in the Circuit

Court of Appeals. *L. & N. R. R.* v. *Parker*, 242 U. S. 13; *Atl. Coast L. R. R.* v. *Mims*, 242 U. S. 532; 3 Cor. Jur. 723, § 619.

No other cases in Pennsylvania support the statement that in Pennsylvania there is a settled rule of law that under no circumstances and for no purposes is a self-serving, unanswered letter admissible in favor of the writer. All that the Pennsylvania cases cited by petitioner decide is that, upon the facts of those cases, the letter offered by the writer was not admissible. See *Hershey* v. *Love*, 278 Pa. 161; *Cosgrove* v. *Himmelrich*, 54 Pa. 203; *Phila. R. R. Co.* v. *Cowell*, 28 Pa. 329.

It is, therefore, not necessary to consider whether there is a diversity of decisions in the different circuit courts on the question whether the Conformity Acts require federal courts in common law trials to follow the rules of evidence of the state courts in which the trial is held, because, (1) in the District Court no attempt was made to show a local rule of evidence binding on that court, and no assignment of error in the Circuit Court of Appeals was taken to the failure to follow the rule of evidence of the local court; and, (2) even if the decisions of Pennsylvania courts had been cited by petitioner in support of a distinctive local rule of evidence, these cases fail to show any such rule.

The certiorari granted in this case should be dismissed as was done in *Layne Bowler Corp.* v. *Western Webb Works*, 261 U. S. 387.

It is well settled that a general exception to a charge is insufficient. There was no error in admitting in evidence the letter of May 9, 1921, nor in holding that petitioner's failure to reply to it, under the facts in the case, was some evidence from which the jury might find ratification of the contract of repurchase made by petitioner's agent.

The cases cited by petitioner may be divided into several groups.

1. Where the letters were written after the contract had been fully performed or the transaction closed, *Fraley* v. *Bispham,* 10 Pa. 320; *Dempsey* v. *Dobson,* 174 Pa. 123; *Kann* v. *Bennett,* 223 Pa. 86; *Packer* v. *United States,* 106 Fed. 906; *Woolsey* v. *Haynes,* 165 Fed. 391; *Thrush* v. *Fullhart,* 210 Fed. 1.

2. Letters containing an argumentative presentation of the writer's case against the other party: *Dempsey* v. *Dobson,* 174 Pa. 122; *Kann* v. *Bennett,* 223 Pa. 36; *Viele* v. *McLean,* 200 N. Y. 260; *Chicago* v. *McKechney,* 205 Ill. 372.

3. Letters whose only purpose was to inform the receiver that if he did not accede to the writer's demands he would be held liable: *Kumin* v. *Fine,* 229 Mass. 75; *State* v. *Howell,* 61 N. J. L. 142; *Biggs* v. *Stueler,* 93 Md. 100; *Seevers* v. *Coal Co.,* 158 Ia. 574; *Bank* v. *McCabe,* 135 Mich. 479; *Marino* v. *Vecchio,* 83 Pa. Sup. Ct. 377; *McNally* v. *Madison Ave. Corp.,* 211 N. Y. 25.

When a letter is written in the course of the performance of a contract, to enable the writer to avail himself of some right under the contract, or to give some notice that may be necessary to establish his claim in court, or meet some defense raised against his claim, such letter is admissible for the writer if its terms do not go beyond the demand or notice with the explanation necessary to render it intelligible. The effect of this notice or demand will depend on the substantive law applicable to the facts of the case and the situation of the parties. It is submitted that the letter at bar was not purely self-serving. At the time it was written there was no breach, nor even a controversy between the parties; it was written to secure performance of the contract; there is nothing in it to suggest that it was written by the respondent with a view

of making evidence for himself, nor was there anything to indicate that it was used at the trial to enable the respondent to have the benefit of his statement out of court, of the contract made with the agent. There had been sufficient proof of the making of the agreement.

Without any loss to itself, petitioner could have retaken the bonds at the purchase price. By its silence on this subject and making the respondent the loan on the bonds, petitioner deferred meeting the issue as to whether the agent had authority to make the agreement. If respondent had failed to prove that petitioner had notice of its agent's agreement until after the bonds had depreciated in value, petitioner could have set up by way of defense that it was not bound to allow a rescission of the sale on such terms as would impose a loss on it. Therefore, it became necessary for respondent to show notice of the agent's agreement and the terms of such notice.

The duty of petitioner on receiving the letter was then determined by the law of agency. Its silence was some evidence of ratification. *Gold Min. Co.* v. *Nat. Bank,* 96 U. S. 640; *Phila. R. R.* v. *Cowell,* 28 Pa. 329; *Morris* v. *Handy,* 3 F. (2d) 97; Williston, Contracts, § 278; Mechem, Agency, vol. 1, § 454; 2 Cor. Jur. 505. When petitioner received the letter, if it did not approve and accept its agent's contract, it was its duty to inform the respondent, and return the consideration and take back the bonds, for this is all the letter called for. Ratification was therefore to be inferred from the failure to restore the consideration. *Sturtevant* v. *Wallack,* 141 Mass. 119; *Morris* v. *Norton,* 75 Fed. 912; *Auringer* v. *Cochrane,* 225 Mass. 273; *Boice Co.* v. *Kelley,* 243 Mass. 327; *Gifford* v. *Gifford,* 224 Mass. 302; Mechem, Agency, vol. 1, § 436; 2 Cor. Jur. 496, § 116.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit by Peirson against the petitioner upon an alleged agreement to repurchase, at any time and at

the purchase price, bonds sold by the petitioner to the plaintiff. The petitioner is a bond house doing a large business, and the only evidence of its having made such a contract was the testimony of the plaintiff that Mather, a salesman, made the promise on the petitioner's behalf, coupled with a letter the admissibility of which is the question here. The purchases were on June 19, 1920, September 23, 1920, and February 28, 1921. The plaintiff testified that on May 9, 1921, he wrote to the petitioner that when he made the second purchase " it was agreed by Mr. Mather that at any time I so desired you would take them off my hands at cost 98. I have need of some money and will avail myself of this privilege. When shall I deliver them to you." The officers of the petitioner denied ever having received the letter and denied the authority of Mather to make any such agreement. It may be mentioned further, although it is not relevant to the question here, that Mather denied having made the contracts alleged. The letter was offered in evidence. It was objected to as a self serving document but was admitted subject to exceptions. There was no other evidence of Mather's authority, but the jury were instructed that, if the petitioner received the letter and failed to disaffirm what Peirson said Mather had done, they would be justified in finding that the petitioner acquiesced in the agreement and that Mather had authority to do what Peirson said he did. The plaintiff got a verdict and judgment and the judgment was affirmed by the Circuit Court of Appeals, 16 F. (2d) 86. On a suggestion of conflict between this and other Circuit Courts of Appeal and of failure to conform to the rule of evidence in Pennsylvania, (a failure in no way affected by the fact that the same rule prevails in most Courts of high authority,) as also of a difference among the Courts as to the scope of the Conformity Acts, a writ of certiorari was granted by this Court. 273 U. S. 676.

A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore, a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission. *Fraley* v. *Bispham,* 10 Pa. 320. *Kann* v. *Bennett,* 223 Pa. 36, 47. *Packer* v. *United States,* 106 Fed. 906. *Woolsey* v. *Haynes,* 165 Fed. 391. *Thrush* v. *Fullhart,* 210 Fed. 1, 6. *Harris* v. *Egger,* 226 Fed. 389, 399. *Kumin* v. *Fine,* 229 Mass. 75. *Viele* v. *McLean,* 200 N. Y. 260. *Richards* v. *Gellatly,* L. R. 7, C. P. 127, 131. *Wiedemann* v. *Walpole* [1891] 2 Q. B. 534, 539. *Thomas* v. *Jones,* [1920] 2 K. B. 399; [1921] 1 K. B. 22.

There were no circumstances in this case to take it out of the general rule. The letter might have been admissible as a demand if a binding contract had been proved, but until evidence of Mather's authority was given the demand was immaterial. It is true that, two days after that on which the plaintiff says that he wrote the letter that we have quoted, the petitioner lent to the plaintiff $15,000 on the security of the $20,000 bonds in question with the usual powers of sale and the plaintiff's note. It would be the merest speculation to regard the plaintiff's story as confirmed by this loan. It may as probably have been an independent transaction, and it might be argued at least as plausibly that the plaintiff's note and assent to the severe conditions of a pledge to brokers was inconsistent with the right that he now asserts. No evidence having been given of Mather's authority to make the contract in suit the petitioner was entitled to a verdict. The request that one should be directed should have been granted. A new trial must be awarded.

*Judgment reversed.*