## HALSEY, STUART & CO. v. FARMERS' BANK OF McSHERRYSTOWN.

Circuit Court of Appeals, Third Circuit.
January 23, 1930.

No. 4066.

Wm. Clarke Mason and John Murdoch Clarke, both of Philadelphia, Pa. (Sullivan & Cromwell, of New York City, and Morgan, Lewis & Bockius, of Philadelphia, Pa., of counsel), for appellant.

Stevens Heckscher and Duane, Morris & Heckscher, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, Circuit Judge, and THOMSON and AVIS, District Judges.

THOMSON, District Judge. This was an action of assumpsit by the Farmers' Bank of McSherrystown against Halsey, Stuart & Co., investment brokers, to recover the purchase price of five bonds of the Elder Steel Steamship Company, of the par value of $1,000 each. As the basis of this action, plaintiff alleged that the bonds were bought from defendant, on the representation of its salesman, Edgar Paxon, that the two steamships which formed the security of the mortgage, under which the bonds were issued, were fully insured against all marine perils, and that, in addition, the company's earnings or profits were insured, and that the interest on said bonds, therefore, would always be paid;

that such statements as to the insuring of the company's earnings or profits were in fact untrue; and that defendant made the same with knowledge of the falsity of said representation, fraudulently intending to deceive plaintiff thereby.

At the former trial of the case, plaintiff amended its statement, changing the action from one in deceit, based on fraud, to one in assumpsit,. based on the defendant's knowledge which it had, or ought to have had, "that the company's profits were not insured but that the insurance covered only profits from contracts not performed because of the total loss of the ships by marine perils."

The affidavit of defense denied that its agent, Paxon, had any authority to make such representations, or that any of its representatives made such representations, as alleged by the plaintiff, in connection with the purchase of said bonds, and averred that the plaintiff knew, or should have known, that insurance of the company's earnings or profits was a kind of insurance wholly unknown to the mercantile world and was not obtainable.

At the conclusion of the first trial, the court entered a judgment of nonsuit, which it afterwards refused to take off. On appeal, the judgment was reversed, the appellate court [21 F.(2d) 818] holding that the case was one for the jury. On the second trial, a verdict was rendered for the plaintiff for the amount of the bonds and judgment entered on the verdict. From the judgment so entered, this appeal is taken.

The errors assigned relate to the admission of certain testimony, and also complain as to certain portions of the judge's charge. From a careful examination of the whole charge, in the light of the pleadings and the issue between the parties, we are not convinced of any substantial error therein.

When the testimony of Mr. Paxon, as to the representations, had been given, counsel for plaintiff endeavored to prove what discussion took place as to the bonds by the board after Mr. Paxon left. Plaintiff's counsel stated that the testimony was offered for the purpose of showing that the directors were induced to their action by the representations of defendant's representative. This offer resulted in the following questions, answers, and rulings thereon.

"By Mr. Heckscher:

"Q. Go ahead, Mr. Reigle, and tell the Court and jury what was said, what was done there—you can relate any discussion that took place.

"By Mr. Mason: No, if the Court please, counsel for defendant objects to the witness relating anything except what took place in Mr. Paxon's presence—not what took place after Mr. Paxon left.

"By Mr. Heckscher: That seems to the counsel for plaintiff, if your Honor please, to narrow the injury too much to limit it to what took place while Mr. Paxon was present, it seems to me Mr. Reigle, if he was present, can relate any discussion as to the buying of these bonds by the bank which was held immediately at the time Mr. Paxon made his statements there and what was in the minds of the directors, that would be the best evidence of what they had in mind at that time—in other words what the discussion was showing their understanding of Mr. Paxon's statement and showing the state of mind of the directors produced by Mr. Paxon's statement.

"By Mr. Mason: Counsel for defendant objects to anything outside of what was said in the presence of Mr. Paxon who was there representing the defendant.

"By the Court: I think their discussion leading to their action might indicate whether or not they were induced by the statements or representations made by Mr. Paxon to act as they did.

"By Mr. Mason: If your Honor please, such testimony would be pure hearsay and of course not admissible—

"By the Court: I think that is true as to the representations.

"By Mr. Mason: And it would be true of any conversations they had among themselves.

"By Mr. Heckscher: If your Honor please, this testimony is offered on behalf of plaintiff not to prove what they said but merely for the purpose of showing that they were induced to their action by the representations of the defendant's representative.

"Q. Mr. Reigle, I will ask you this question: After Mr. Paxon had made that statement what, if any, discussion was there by your directors about buying these bonds?

"By Mr. Mason: This is objected to if your Honor please, unless Mr. Paxon was present.

"Q. Was Mr. Paxon there at the time?

"By the Witness:

"A. Not when the action was taken in buying the bonds—the bond salesmen never remain in the room when the bonds were taken.

"By Mr. Heckscher:

"Q. What was that discussion—

"By Mr. Mason:

"Q. Just a moment please—so that any discussion I want to get that clear—any discussion that took place as to this particular feature of the bonds was after Mr. Paxon left the room?

"A. Yes, sir.

"By Mr. Heckscher:

"Q. After he left the room what discussion took place as to any feature in the bonds?

"By Mr. Mason: That is objected to, if your Honor please, as before.

"By the Court: The objection is overruled, I will receive that."

To which ruling of the court counsel for defendant except, and at his request such exception is noted and bill sealed.

Plaintiff's counsel later moved to strike out this testimony, which motion was overruled and exception noted.

Error in the admission of this testimony and the court's refusal to strike it out are raised in the eighteenth and twentieth assignments.

■ This evidence was incompetent and should not have been received. To receive such evidence would open a wide door of inquiry, involving possibly what the witness said, or the understanding of what the witness said; what inferences could be drawn from the language used and to what extent the representations influenced the minds of the directors in purchasing the bonds. Had the selling agent been present, a wholly different situation would have been presented, but in his absence, the conversations or statements passing between the members of the board on the subject-matter to which the agent had testified would clearly not be competent.

We are of opinion this testimony was incompetent and should not have been received.

The nineteenth assignment charges **error** in the introduction of a letter, dated December 29, 1921, Plaintiff's Exhibit No. 5, written by the plaintiff to the defendant, after the bank had been notified that the interest on the bonds due January 1, 1922, could not be paid. This letter contained the following words: "When we bought these bonds from your Mr. Paxon, he informed us that the earnings of the company are insured and therefore it would be impossible for the bonds to default in the interest payments. We have

reason to believe that Mr. Paxon received this information direct from your office."

The offer of this letter was objected to by defendant's counsel, the objection overruled, and bill sealed.

Defendant claims that no witness testified that Mr. Paxon had ever said "and therefore it would be impossible for the bonds to default in the interest payments." It is claimed by the defendant that these words merely represented an inference which some of the directors drew from the words actually used by the witness. The letter constitutes a self-serving declaration, and whether it was admissible or not depends legally on the question whether, under the circumstances, an answer thereto was required by the defendant.

In the case of Leach & Co. v. Peirson, 275 U. S. 120, 48 S. Ct. 57, 72 L. Ed. 194, 55 A. L. R. 457, Justice Holmes said: "A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission." Fraley v. Bispham, 10 Pa. 320, 51 Am. Dec. 486; Kann v. Bennett, 223 Pa. 36, 72 A. 342.

■■ In an action for fraudulent representations, letters written by the plaintiff, which were not in contradiction of his testimony, are incompetent. So, also, are letters written by the defendant, which contain self-serving declarations. Harris v. Egger (C. C. A.) 226 F. 389.

■ The self-serving declarations contained in the letter offered and admitted in evidence could not be competent, unless the circumstances were such as to make requisite an answer in denial of such statements. We think there was no such necessity under all the circumstances for denial here, as made the offer competent.

■ The defendant's twenty-second assignment of error is based on permitting plaintiff's counsel to cross-examine Mr. Kress, defendant's insurance expert, by the use of a certain newspaper clipping. Mr. Kress, on direct examination, had testified that there was not in 1920, nor has there been since, insurance obtainable to insure profits of a steamship company, or any other company,

inasmuch as the underwriters consider such insurance economically unsound. On cross-examination, plaintiff's counsel held in his hand a newspaper clipping which reported that the Sun Insurance Company had insured the Great Vickers Armstrong Works, for several millions of dollars, and asked Mr. Kress whether he had read of such insurance in the public prints and conveyed to the jury, partially by his own statement, and partially from reading from the newspaper clipping, that such insurance actually existed. When the witness answered, "No," plaintiff's counsel handed the clipping to the witness, asking whether he would still say that such insurance did not exist.

Such statements in the public prints were not evidence of the matters therein stated and could not be made evidence either directly, by offering the clipping, or indirectly on cross-examination by reading therefrom. The existence or nonexistence of the fact referred to in the article was an important question at issue between the parties, perhaps the most important question in controversy between them.

On the whole, it appears to us that the evidence admitted under the aforesaid three assignments of error was so far material and prejudicial as to call for a reversal of the judgment. The judgment is therefore reversed, and a new trial awarded.