**BOERNER v. UNITED STATES.**
No. 104.

Circuit Court of Appeals, Second Circuit.
Feb. 4, 1941.

See also, D.C., 26 F.Supp. 769.

C. Joseph Danahy, of Brooklyn, N. Y., for plaintiff-appellant.

Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y. (Harold M. Kennedy, U. S. Atty., and J. Wolfe Chassen, Asst. U. S. Atty., both of Brooklyn, N. Y., on the brief), for defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The plaintiff was a chauffeur-carrier employed by the United States Post Office Department at Long Island City, New York, until he was separated from the

service for cause in 1935. He has brought this action under the Tucker Act, 28 U.S.C.A. § 41(20), to secure a refund, as provided in 5 U.S.C.A. § 724, of the deductions made from his salary during his term of service for credit to the civil-service retirement and disability fund. His claim for such refund, in the amount of $720.35, has never been disputed; the sole question has been with respect to the Government's counterclaim for losses of postal matter through plaintiff's thefts or other culpable conduct in the amount of $722.35. The district court denied plaintiff's motion for a summary judgment, 26 F.Supp. 769, and then, after a trial in which defendant presented evidence in support of its counterclaim, and plaintiff offered no rebuttal, the court ruled that defendant had made a prima facie case and gave judgment in its favor for the $2.00 balance and its costs. 30 F.Supp. 635. The case on appeal turns upon the admissibility of much of the evidence offered by defendant and its sufficiency to establish a prima facie case. The two issues substantially "coalesce" (Cmuk v. Lehigh Valley R. R. Co., 2 Cir., 116 F. 2d 569, Jan. 6, 1941), because once the evidence is considered admissible there is little doubt but that its natural import is to support the conclusion the court reached.

The interesting feature of this case is that, although the Government succeeded in demonstrating this carrier's defalcations so that he pleaded guilty to embezzlement from the postal service and served his sentence of imprisonment, yet it is compelled herein to rely for proof of its losses to a considerable extent on circumstantial or inferential evidence which plaintiff bitterly attacks as not reaching common law standards of proof. The Government first relied on the defense that plaintiff had not exhausted his remedies before the United States Civil Service Commission, but now abandons that claim in the light of the law, at least as it was at the time. It does claim that some effect should be given to the fact that the General Accounting Office acting under 31 U.S.C.A. § 109, after investigation and notice to and objection by the plaintiff, determined that the refund should be withheld to offset the losses which it held established. That claim does not seem to have been made below and we do not find occasion to consider it. Plaintiff's contentions as to common law proof may perhaps invite a comparison between it and more direct administrative procedure, or even business practice, as shown by acquiescence in the Government's demand to the extent of its liability by the corporate surety on plaintiff's bond. But whatever the common law standards may be, we do not think they can apply to excuse any response by plaintiff to the case here made against him. He knew the postal laws and regulations, receipt of which he acknowledged in writing in 1930, whereby, among other things, he was held liable for the value of government property lost or destroyed; he was required to take oath to abstain from everything forbidden by the postal laws and to account for any money of the United States which might come into his possession, 5 U.S.C.A. § 365; and he had to give bond, with surety, "for the safe custody and delivery of all mail matter, and the faithful account and payment of all money received by him." 39 U.S.C.A. § 157. It is in the light of these obligations which he had assumed that the Government's case must be tested.

The counterclaim herein is based upon the loss of 66 items of C.O.D. and insured parcels post, which had been mailed to addressees on plaintiff's route from various parts of the country—half from New York City, six from Brooklyn, and others from points from New England to Florida and California. These were a part of larger losses not claimed herein; it was testified on behalf of defendant that doubtful items were eliminated, so that only matter was included which in ordinary course of the post should have reached plaintiff when he was actually in service and alone due to receive it for distribution and delivery. Mailing of each of these parcels was conceded, as was also the fact that defendant, after investigation, had paid claimants for their loss. The contest came over the evidence offered to prove that the items were not delivered to the addressees and that they came into plaintiff's hands for delivery. For the first, defendant relied on the proofs of loss sworn to by the addressees, which plaintiff objected to as only hearsay. For the second, defendant relied on (a) the presumption of regular transmission of the mail, limited, however, by evidence of plaintiff's misconduct to apply only until it reached his hands, and (b) plaintiff's failure, after he had admitted wrongdoing, to make any response to the various demands of the post office with respect to these specific items. Plaintiff's objections here are that the pre-

sumption can be used to show delivery either to the addressees or not at all, and that plaintiff's silence is not evidence against him.

So far as the first point is concerned, it is not doubted that competent evidence exists; the question is whether it must be proved in the hard way. Defendant could either bring on the addressees for trial, or take their depositions; but it is hardly justified in so doing to prove items of seventy-six cents up, with only two over $30, and two-thirds less than $10 each. Such a rule would mean that actually the proof would not be had. Here the 66 proofs of loss were in evidence; each contained a declaration by the initial postmaster that the parcel had been received, a declaration by the postmaster at destination that there was no record of its delivery, an affidavit by the sender of the contents of the parcel and their value, and an affidavit of the addressee of its non-receipt. The district court received them in evidence as showing the Government's course of conduct, and as in the regular course of business, not for "purposes of proving their allegedly hearsay contents in the form of affidavits of addressees and senders." From this it concluded that the Government had made reasonable investigation before payment, and that thereupon plaintiff became chargeable with the losses, absolute proof thereof not being required.

■■ We may freely concede that this is but to sugar coat the pill; for after all, it is the affidavits of the addressees which are the essential things to set the governmental processes in motion. Nonetheless we think the result is correct. We are dealing only with the prima facie case. When the Government has established that it has accepted the burden for the losses after fair investigation, we think that this employee, whose duty it is to make safe delivery and in essence to account for all losses he has caused the Government, should attempt to explain if he can; at least he cannot stand mute and thus evade responsibility. Indeed, a persuasive opinion of the Fifth Circuit goes so far as to accept the affidavits themselves as proof of the value of the articles, i. e., proof of what they disclose. United Fruit Co. v. United States, 5 Cir., 33 F.2d 664, 666. There the claim was against a common carrier which acted as agent of the Government, and the court said that the situation was different from one between private parties, for the defendant was charged with the knowledge of what evidence the plaintiff would require from the senders of registered mail in order to prove their claims. It continued: "The United States is not obliged to recognize claims of any character against herself, and therefore in doing so may adopt such form of procedure or require such evidence of liability as she sees fit. The regulations in this respect are entirely reasonable. The penalties prescribed by law for perjury and the presentation of false claims against the government may be presumed to be sufficient to prevent false swearing in the claim affidavits for the small amounts shown. It would be absurd, and an unjust burden on the defendant, to require the United States in a suit of this kind to summon witnesses from great distances to prove on the stand the small amounts of losses shown. The evidence was admissible to show a prima facie case. No attempt was made to rebut it, which right was, of course, preserved to the defendant."

■ We think this is a sound and just rule and we follow it here. As a matter of fact, use of such evidence generally is in line with modern trends of reform which urge the admissibility of hearsay where its trustworthiness is indicated and the declarant is unavailable. A.L.I.Code of Rules of Evidence, Council Draft No. 4, Rules 603, 615; Evidence Act, 1938, 1 & 2 Geo. VI, c. 28; 34 Ill.L.Rev. 974; Callahan and Ferguson, Evidence and the New Federal Rules of Civil Procedure, 47 Yale L.J. 194, 204-207.

Proving receipt of the parcels by plaintiff becomes a problem because the post office department keeps no record of the passage of each item through the postal service, other than copy of the initial receipt given the sender and ultimately receipt of the addressee if final delivery is made. Presumably the extra expense and delay which such additional record keeping would entail make it impossible; at any rate, if absolute proof of custody by its carriers is necessary before the Government can claim loss, it is clear that no collection of losses will be had. Since such a rule would mean that the carrier's surety is also absolved, the importance of the point is obvious.

■ The well-known rule on which defendant relies is usually, though perhaps

erroneously, couched in terms of presumption to the effect that when an article is mailed its receipt by the addressee is inferred or presumed. Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395; Dunlop v. United States, 165 U.S. 486, 17 S.Ct. 375, 41 L.Ed. 799. To show, however, that in this case such presumption would hold only up to receipt of the parcels in ordinary course by plaintiff for delivery by him, defendant offered proof, over plaintiff's objection, of various matters showing plaintiff's derelictions in his duties. These included the facts that the losses on plaintiff's parcel post route were ten times or more greater than the average of the other six routes emanating from the Long Island City Post Office until plaintiff was superseded, whereupon they dropped to normal; that when suspicion was thus cast upon plaintiff, a test package was made up for delivery on plaintiff's route, and its loss was traced to him; that upon search of his automobile certain missing parcels post and government property were discovered; that plaintiff had been guilty of various infractions of the rules, such as the delivery of parcels to others than the addressees, failure to take receipts, and improper collection of "postage due" and other stamps; and that plaintiff admitted wrongdoing and pleaded guilty to the charge of embezzling property of the United States.

We think the evidence was admissible and was effective to prove the point claimed. Confusion comes from treating the rule in question only or substantially as a matter of presumption. Thus Wigmore says that "it is probable that no real presumption is meant to be predicated in the majority of these instances," "that the mailing or depositing of Doe's letter or telegram to Roe is usually treated as sufficient evidence of Roe's receipt of it." 9 Wigmore, Evidence, 3d Ed., § 2519; and see also 1 ibid. § 95; Rosenthal v. Walker, supra; Huntley v. Whittier, 105 Mass. 391, 392, 7 Am.Rep. 536. He also points out that, while the government postal machinery is already known to the court, yet a like rule will apply to a private delivery service to the extent that the habit of the service as to regular delivery is shown. Ibid.; Dunlop v. United States, supra. Here, therefore, the court had before it the ordinary postal processes, plus extensive evidence that they had broken down so far as plaintiff's duties were concerned. What is the natural inference to be drawn from such facts? Clearly reasonable deductions are that the general habit or course of the mail was here limited by a particular course of failure to perform, and that hence the general as thus limited by the particular indicated receipt of the parcels by plaintiff, in the absence of evidence to the contrary.

■ Upon this view the further evidence offered against plaintiff was only cumulative. We think that it, too, was properly received. It appears that on April 14, 1935, three days after the postal inspectors had caused his arrest for embezzlement of the test package referred to above and had charged him with misappropriation of other mail and of government property, plaintiff addressed a letter to the inspectors, as follows: "In deep regret must admit myself liable for punishment as Department directs, for neglect of proper handling of mail and making use of government property, but hoping sooner or later I may find some way to clear myself of the charge of embezzlement [sic]." He was indicted in May and came to trial the following November 21. On July 31, 1935, the inspectors addressed a letter to him in which they recited that they had caused his arrest and referred in detail to their initial investigations and what they had found, and then continued that their further investigations had established plaintiff's responsibility for disappearance of the parcels described in the attached list, amounting to $1,518.87, for which they made specific demand. The attached list, consisting of many pages, described in detail each individual item of loss. Again on September 21, 1935, they addressed a further letter to him referring to their previous letter and claim and stating that further investigations had established his responsibility for additional parcels, again carefully listed, amounting to $139.35, "which brings the total amount of your embezzlements to $1,658.22," for which again demand of immediate payment was made. Finally on November 2, 1935, there followed a similar letter claiming the value of additional parcels as listed, in the amount of $103.49, or a total of $1,761.71. It is admitted that plaintiff received these letters, that they described the items here claimed, and that he made no reply.

■ How far there may be an inference of assent by silence is a question not without difficulty. Oral statements of an-

other made in the party's presence without the latter's protest are quite freely received, 4 Wigmore, Evidence, 3d Ed., § 1071; but there is much more question as to the failure to reply in writing to a written communication. Ibid. § 1073: "Any definite rule, then, seems impracticable; and the precedents indicate that each case must stand on its own facts." The question is whether or not "its own facts" here disclose a situation where there is fairly an obligation to reply and disavow the claim if untrue. Thus, in Rumble v. United States, 9 Cir., 143 F. 772, an unanswered letter was admitted against the defendant in a prosecution for mail frauds, where it was shown to be part of a larger correspondence; and other examples are indicated in Benn v. Forrest, 1 Cir., 213 F. 763, Morris v. Norton, 6 Cir., 75 F. 912, 924, and United States v. Babcock, 24 Fed.Cas. pages 913, 924, No. 14,487, 3 Dillon 581. In Leach & Co. v. Peirson, 275 U.S. 120, 128, 48 S.Ct. 57, 58, 72 L.Ed. 194, 55 A.L.R. 457, where such evidence was excluded (in a ruling said by Wigmore, op. cit., to be erroneous "both on principle and on the particular facts"), it was pointed out that there were no circumstances "to take it out of the general rule." See Lord & Spencer, Inc. v. M. N. Stout Co., 1 Cir., 33 F.2d 60, 62, as to "a general rule, subject to important exceptions." Nevertheless, Wigmore, op. cit., says "there is no such general rule," in criticizing "overstrict New York rulings." The rulings in New York seem to turn on the particular circumstances, as in Henry Glass & Co. v. Misroch, 239 N.Y. 475, 484, 147 N.E. 71, 75; Thomas v. Gage, 141 N.Y. 506, 509, 36 N.E. 385; in any event, they do not limit us, for we are directed by Federal Rule 43(a), 28 U.S.C.A. following section 723c, to follow that holding on evidence, whether state or federal, which most favors admissibility.

Here was a public employee whose duty it was to assist in any investigation of losses and to account therefor, and who had responded to the initial charges by admitting a portion of them while expressing a hope that he might find some way to clear himself of the charge of embezzlement. We think that his failure under the circumstances to reply to the specific and detailed claims made by the inspectors fairly justifies the inference that he had not found the way to clear himself of the charges. This, too, supports the prima facie case which we hold

defendant to have presented. It may well be that had plaintiff chosen to attempt rebuttal of the case presented, he could have offered only either a blanket denial or a failure to recall any particular item of mail that he had handled. But this he could have done and thereby submitted himself to the searching cross-examination which his known derelictions indicated. When he thus failed to claim the favorable inferences which the meeting of such a test would have suggested, the judgment against him was appropriate and justified.

Affirmed.