Gertrude B. HAHN (nee Kiefer),
Plaintiff,

v.

The UNITED STATES of America,
Defendant.

Civ. No. 3741.

United States District Court,
S. D. Ohio, E. D.

June 18, 1954.

———◆———

Vorys, Sater, Seymour & Pease, Columbus, Ohio, for plaintiff.

Hugh K. Martin, U. S. Atty., Columbus, Ohio, David W. Richter, Special Asst. to the Atty. Gen., for defendant.

CECIL, District Judge.

The plaintiff, Gertrude B. Hahn, filed a complaint in this case to recover from the defendant, The United States of America, the sum of $133 with interest, which she claimed by reason of taxes erroneously collected from her for the years 1947, 1948 and 1949.

The case was tried and submitted to the Court upon the pleadings, the evidence and briefs of counsel.

The question in this case arises out of the manner in which the plaintiff received these properties. If she received them by deed of gift from her mother,

then she must take as the valuation of said properties for income tax purposes, the cost to the donor, who is the mother of the plaintiff in this case. Section 113 (a) (2), Title 26, U.S.C.A.

If the plaintiff received the properties by inheritance under her mother's will, then the valuation will be the real value as of the date of the inheritance. 113(a) (5), Title 26, U.S.C.A.

It is the claim of the plaintiff that the deeds in question were deeds of trust and that she held the property in trust for her mother and, therefore, acquired the fee by inheritance.

Upon consideration of this case, the Court finds the following facts:

1. That in 1934 the plaintiff, then Gertrude B. Kiefer, was living with her widowed mother at 1284 Champion Avenue, Columbus, Ohio; that the plaintiff had lived with her mother at that address since 1930 and that she had lived alone with her mother since March of 1928.

2. That in 1930 and thereafter, until 1934, the plaintiff had one sister and two brothers; that the sister's name was Catherine Nehr and that in the year of 1934 she was married; that the older brother was named Edmund C. Kiefer; that the younger brother was named Louis and died in 1934.

3. That in 1934, Mary Kiefer, the mother of the plaintiff, had the legal title and possession of two pieces of real estate known as the Champion Avenue property and the Pearl Street property.

4. That on May 15, 1934, at a time when the plaintiff was not with her mother, the mother deeded the Champion Avenue property (plaintiff's Exhibit 1) to the plaintiff and the Pearl Street property to the sister; that she placed these two deeds in her safety deposit box at the Buckeye Building & Loan Association.

5. That the mother, Mary Kiefer, told her daughter Gertrude, the plaintiff herein, that she had made the deeds and placed them in her safety deposit box and that she wanted the plaintiff to have the Champion Avenue property after her death; that at the same time she told the plaintiff she had deeded the Pearl Street property to Catherine Nehr and that it was for her sister's use after the mother's death.

6. That the plaintiff had access to the mother's safety deposit box and frequently took her mother to the box; that while she knew the deeds were there, she probably never actually saw them.

7. That on June 28, 1939, the mother, Mary Kiefer, because of some misunderstanding with her daughter, Catherine, destroyed the deed of May 15, 1934, to the Pearl Street property and executed a new deed for said property to the plaintiff herein (plaintiff's Exhibit 2).

8. That on this same date she made and executed a will (plaintiff's Exhibit 3); that by Item 5 of said will she gave to her daughter Gertrude, the plaintiff herein, specifically the Champion Avenue property, and by a general bequest in the same Item, she gave to the plaintiff herein, all of her real estate.

9. That on November 2, 1944, the plaintiff herein recorded deeds marked Plaintiff's Exhibit 1 and Plaintiff's Exhibit 2.

10. That in 1944, the mother, Mary Kiefer, advised her daughter that the son and brother, Edmund, had asked the mother for one-half of the double house on Champion Avenue, and inquired about what provision she had made for disposal of her property; that thereupon the plaintiff talked to her employer and upon his advice, sought legal counsel with Mr. Harold Tangeman, who appears as counsel for plaintiff in this case; that upon his advice the deeds were recorded.

11. That she discussed with her mother her intention to have the deeds recorded and advised her that there would be no difference in the mother's ownership of the property; she would continue to collect the rents just the same as if the deeds had not been recorded.

12. That the plaintiff asked Mr. Tangeman what would happen to her moth-

er's interest in the property, the deeds being recorded, if she, the plaintiff, should die before her mother; that she was then advised by Mr. Tangeman to write a letter to her mother, stating that she held property in trust for the mother; that thereupon, on November 2, 1944, the plaintiff signed a letter (plaintiff's Exhibit 4) which she gave to her mother. The text of the letter is as follows:

"This is to acknowledge the fact that I hold the property which you deeded to me on May 15, 1934, and the property which you deeded to me on June 28, 1939 in trust for you during your lifetime.

"You are to receive all of the income of these properties so long as you live.

"Upon your death, the properties are to be my sole and absolute property in fee simple."

13. That the mother, Mary Kiefer, died December 23, 1946.

14. That on March 26, 1948, the plaintiff, as executrix of her mother's estate, filed an application for the determination of inheritance tax (defendant's Exhibit A) which includes an itemization of the assets of the estate, but does not include either of the properties in question.

15. That on March 1, 1951, the plaintiff, as executrix of her mother's estate, filed a supplemental application (defendant's Exhibit B) for the determination of inheritance tax; that in the Schedule of Assets attached to this application, the Pearl Street property is listed as having a value of $4,500. and the Champion Avenue property is listed as having a value of $12,500.

16. That on March 14, 1951, the plaintiff filed a claim (defendant's Exhibit C) for refund of taxes.

17. That the plaintiff, Gertrude B. Hahn, never claimed or exerted any right of ownership or interest in either of these properties until after the death of her mother, Mary Kiefer.

18. That the mother, Mary Kiefer, managed the properties in question throughout her lifetime; received all of the rents and paid all of the taxes and expenses.

19. That the plaintiff, in making out her income tax return for the years 1947, 1948 and 1949 used her mother's cost as a basis of valuation for the purpose of figuring depreciation.

20. That in December, 1946, the fair market value of the Pearl Street property was $4,500, $500 of which was the value of the land and $4,000 the value of the building; that at the same time the Champion Avenue property had a fair market value of $12,500, of which $2,000 was the value of the land and $10,500 was the value of the building.

21. That on or about the 26th day of February, 1951, the plaintiff sold the Pearl Street property.

22. That in 1950, the plaintiff was married and became Mrs. Gertrude Hahn.

Can these facts be naturally and logically construed so as to create the relationship of trustee and cestui que trust between the plaintiff and her mother, Mary Kiefer?

The most recent pronouncement of the Supreme Court of Ohio upon this subject is in the case of Hill v. Irons, 160 Ohio St. 21, 113 N.E.2d 243, 245. The first syllabus of this case reads as follows:

"In order to engraft a trust upon an absolute deed, the declaration of such trust must be contemporaneous with the deed, and the evidence relied upon must be clear, certain and conclusive and must establish the existence of the trust beyond a reasonable doubt."

In the opinion, Middleton, J., quoted from Russell v. Bruer, 64 Ohio St. 1, 59 N.E. 740, as follows:

"'A trust engrafted on an absolute deed may be shown by parol evidence; but the declaration of such trust must

be contemporaneous with the deed, and the evidence beyond a reasonable doubt as to the existence of the trust, and must be clear, certain, and conclusive as to its terms and conditions.'"

If a trust were created in this case, was it created on May 15, 1934 and June 28, 1939, the respective dates of the deeds in question, or was it created on November 2, 1944, the date of the recording of both deeds?

On or about May 15, 1934, the mother, Mary Kiefer, announced to the plaintiff, that she had deeded her the Champion Avenue property and had deeded to her daughter, Catherine, the Pearl Street property.

On page 5 of the record, the plaintiff states what her mother told her in the following language:

"She told me that after her death, she wanted this property to belong to me. I had always lived with her and taken care of her and that was her wish."

With reference to the Pearl Street property, the plaintiff testified on the same page, "It was made out for my sister's use after my mother's death."

■ Under the facts as above stated, the Court considers that there was no delivery of these deeds. The transaction of making out these two deeds has all the appearance of being an intent to convey the property at the death of the mother. It would be in accord with a common idea among laymen that property can be transferred at death in such a fashion and thus avoid administration and other complications of transferring property after death.

The conclusion that the mother had no intention of delivering the deeds at the time they were made is fortified by her later action of destroying the deed of the Pearl Street property to the daughter Catherine. This came about as a result of some dissension between the mother and the daughter Catherine. It could well have' happened to the plaintiff and

the deed of the Champion Avenue property.

In 1944, brother Edmund began nosing around about the mother's anticipated disposition of her property. He apparently made a strong suggestion that the mother give him one-half of the Champion Avenue property. This incident caused some apprehension on the part of the plaintiff and her mother. As a result of it, the plaintiff talked to her employer, who recommended that she seek legal counsel. As a result of this counsel, the deeds were recorded on November 2, 1944. Apparently after this advice, the plaintiff discussed with her mother, her intention to record the deeds and assured her that there would be no change so far as the plaintiff was concerned in the mother's ownership of the property; the mother was to collect the rent just the same as if the deeds had not been recorded. R. p. 11.

There is nothing in the record to indicate what, if anything, the mother said concerning this proposed transaction. Apparently she acquiesced in it. There is not one word here that would indicate that the mother and daughter intended to create a trust.

■ This transaction has the appearance of being a delivery of the deeds; a gift of the remainder to the plaintiff with the oral reservation of a life estate in the mother. Such an oral creation of a life estate would be good as between the mother and the daughter, but would not be binding as to third persons.

■■ Counsel for plaintiff points to plaintiff's Exhibit 4 that a trust was created. This is a mere self-serving declaration. The plaintiff cannot make evidence for herself by writing a letter containing the statements she wishes to prove. Leach & Co. v. Peirson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194.

The Court does not consider that the will of the mother, which was executed on the same day as the deed to the Pearl Street property has any particular sig-

nificance with reference to the creation of a trust. The mother was apprehensive about action that might be taken by the son, Edmund, and daughter, Catherine, with reference to her disposition of property. She may well have considered that it would be wise to fortify the deeds with a will.

The Probate Court of Franklin County never made a determination of the question as to whether or not the facts in this case created a trust. The plaintiff, through her counsel, filed an amended application for the determination of inheritance tax and included these properties which had not been included in the original application. Obviously, the court permitted the estate to be increased in this manner.

The burden of proof is upon the plaintiff to show that this transaction was something other than a gift. She seeks to do this by showing that under the facts a trust relationship was established.

Referring again to the Hill case, supra, Middleton, J., said at the bottom of page 27 of 160 Ohio St., at page 247 of 113 N.E.2d "It has long been settled law that a trust may be engrafted upon a deed absolute but it is equally well settled that the evidence must be of a very persuasive character."

The conclusion of the Court is that the plaintiff has failed to establish by the required degree of proof that the properties in question were deeded to her in trust for the use and benefit of her mother.

The plaintiff's complaint will be dismissed and judgment awarded to the defendant.

The Court considers that this opinion contains a sufficient Findings of Fact and Conclusions of Law to comply with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Counsel for defendant will prepare and submit a proper Order of Judgment.