## THROCKMORTON v. ST. LOUIS-SAN FRANCISCO RY. CO.

### No. 14001.

United States Court of Appeals
Eighth Circuit.
Jan. 13, 1950.

John H. Haley, Jr., St. Louis, Mo. (Charles P. Noell, St. Louis, Mo., on the brief), for appellant.

Cullen Coil, St. Louis, Mo. (E. G. Nahler, C. H. Skinker, Jr., and Roscoe Anderson, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, J O H N S E.N, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal from a judgment for the defendant (appellee) entered upon the verdict of a jury in an action brought by a former switchman of the defendant under the Federal Employers' Liability Act, 45 U.

S.C.A. § 51 et seq., to recover for injuries alleged to be due to a violation by the defendant of the Federal Safety Appliance Act, 45 U.S.C.A. § 11.

The accident, in which the plaintiff (appellant) lost both of his legs below the knees, occurred in the early morning of June 12, 1948, on a track of the defendant at Springfield, Missouri. In his complaint the plaintiff alleged, in substance, that, while performing his duties as a switchman for the defendant, he tightened and set a hand brake on a moving tank car and was thrown from the car onto the track, due to the fact that the brake was defective and that the wheel of the brake revolved violently in reverse after the brake had been set. The defendant in its answer denied liability, but admitted that the plaintiff, at the time of the accident, was in its employ, that the accident occurred, and that he was injured.

The plaintiff's evidence tended to establish his claim that the accident and his injuries were the result of the hand brake he was using being defective and throwing him from the car. The defendant's evidence tended to show that the brake in question was not defective, but was in good operating condition; that shortly after the accident it was found to have been set, and that the plaintiff's injuries could not have been caused by a defect in the brake.

The issues submitted to the jury were, in substance, whether the brake was defective, and whether, if it was, that was the proximate cause of the plaintiff's injuries. The jury by its verdict resolved one or both of these issues in favor of the defendant.

The validity of the judgment is challenged on the grounds: (1) that the court excluded competent evidence; (2) that the court was unfair; (3) that counsel for the defendant was guilty of misconduct in his argument to the jury; and (4) that the court abused its discretion in denying the plaintiff's motion for a new trial.

## 1.

The plaintiff, who at the trial was one of the first witnesses called, testified as to how the accident happened. He stated, on direct examination, that the ambulance arrived probably about fifteen minutes after he was run over, and that, prior to its arrival, he had said nothing to anyone as to how the accident happened; that when the ambulance arrived and he was taken from under the car, he "said something to Mr. Nunn" [later shown to be a car inspector for the defendant]. The plaintiff's counsel then remarked: "Well, tell the Court and jury what was said." The defendant objected, and the court sustained the objection. This it is claimed was error. No offer of proof was made, and the court was not advised as to what it was claimed the plaintiff had said to Mr. Nunn. On the cross-examination of Alvin J. Nunn, who testified as a witness for the defendant, he was asked: "Did you after, just as soon as he was loaded in the ambulance, talk to Jimmie [the plaintiff]?" The answer was, "No, sir." The plaintiff was called to the stand in rebuttal, but was not again asked whether he had said anything to Nunn. It thus appears that throughout the trial the court was not informed that the plaintiff claimed that, at or near the time he was injured, he had made a statement to Nunn which related to the cause of the accident or which would have been admissible on any theory.

After the trial and upon the argument of the plaintiff's motion for a new trial, it was asserted that if the plaintiff had been permitted to tell what he claimed he said to Nunn, he would have testified that he told Nunn to "look at that brake, it knocked me off." It is to be noted that the statement of plaintiff's counsel to the plaintiff, "Well, tell the Court and jury what was said," furnished no clue as to what answer was intended to be elicited or upon what theory the plaintiff claimed that the answer would be admissible. After the court sustained the defendant's objection, counsel for the plaintiff did not pursue the matter further, but said: "All right then. I believe that is all at this time." Under the circumstances, assuming the admissibility of the evidence excluded, the trial judge did not err in sustaining the objection. We think, however, that testimony by the plaintiff that this self-serving declaration was

made by him would not have been admissible. The plaintiff had, under oath, already given his version of the cause of the accident.

The exact question here presented was considered by the Supreme Court of Minnesota in Perkins v. Great Northern Railway Co., 152 Minn. 226, 188 N.W. 564. The court said, page 567 of 188 N.W.: "* * * Plaintiff had testified fully to the circumstances under which he was injured. The jury had his sworn statement. He was not impeached by proof of contrary statements out of court. In effect he was permitted to give in evidence his unsworn self-serving declaration otherwise clearly inadmissible on the theory that because the declaration was part of the res gestae he might testify that he had made it, and that, if made, it tended to prove that the facts were as he had related them from the witness stand. In support of this theory, it may be argued that the law permits one who heard the spontaneous utterance of a party to testify to it and hence there is no good reason why the party himself may not testify to his own exclamations. * * * So far as we have discovered, it has never been held that a party may bolster up his case by testimony that he made a self-serving declaration so closely connected with an injury he received as to be part of the res gestae, and a court should be reluctant to adopt a rule of evidence which would tempt a party accidentally injured to make evidence for himself. * * * In no state has the res gestae doctrine been extended farther than in Minnesota. The extension now proposed would not serve the purpose of getting at the truth, which is the sole end towards which all rules of evidence should be directed. * * * "

The Supreme Court of Minnesota again considered the question in Fischer v. Chicago and Northwestern Railway Co., 193 Minn. 73, 258 N.W. 4, and again held such evidence inadmissible, upon the authority of the Perkins case.

It is contended that the trial court erred in excluding from evidence a letter written on September 16, 1948, by the plaintiff to the Continental Casualty Company, in which he had a policy of accident insurance The letter reads as follows:

"Sept. 16, 1948
St. Johns Hospital
Springfield, Mo.

"Dear Sir:
"I received a letter from you all the other day wanting to know how I got hurt. Well as you all know I am a switchman for the S. L. S. F. Railroad. Well that night I got hurt I was sitting a hand brake when it spun me off in to the middle of the tracks. Therefore the cars cutting my legs off & breaking my right leg all so.
"Yours truly,
"Johnie Throckmorton."

The theory upon which the plaintiff asserts that this letter was admissible is that there had been received in evidence an "Affidavit of Claimant for Indemnity for Limb Loss," signed by the plaintiff and dated July 27, 1948, which, opposite the question, "How did accident happen?" contained the answer "Don't know." The record shows that the defendant, during the cross-examination of the plaintiff, interrogated the plaintiff as to whether his signature appeared upon the affidavit, and as to whether he gave "the answer that is on the paper." The plaintiff testified, in effect, that he did not make the statement in the affidavit which indicated that he did not know how the accident happened, and that he did not fill in the answers to the questions contained in the affidavit, but that he might have signed it. The defendant did not introduce the affidavit in evidence or exhibit it to the jury, and counsel for the plaintiff then introduced it in evidence and handed it to the jury. After its introduction, the plaintiff called the agent who had written the policy, and, on direct examination, he testified that he had filled out the "claimant's statement" and put in the words, "Don't know," and that the plaintiff never told him that he (the plaintiff) did not know how the accident occurred. On cross-examination, the agent testified that the plaintiff refused to tell how the accident happened; that the agent filled in the words, "Don't know," and left the paper with the plaintiff. The plaintiff also called the at-

torney who had notarized the affidavit. The plaintiff, without objection, had this witness read to the jury the following letter of the Continental Casualty Company to the plaintiff, dated August 13, 1948:

"Dear Sir:

"Mr. Hubbard sent to us some statements in regard to your claim. Will you be kind enough to write on the back of this letter telling us, 'How did the accident happen?' I note in reply to this question on the form that you did not answer this.

"A return envelope is enclosed for your convenience.

"Yours very truly,
"R. I. Betty, chief adjuster,
"A. & H. Claim Department."

After offering some other correspondence relative to the plaintiff's proof of claim against the Casualty Company, the plaintiff offered the letter of September 16, 1948, in which he stated that the brake spun him off into the middle of the tracks. To the introduction of this letter the court sustained an objection based on the ground that it was self-serving.

[3] The plaintiff contends that the defendant opened the subject of whether the plaintiff knew how the accident happened, and was responsible for creating a serious doubt as to whether the plaintiff ever knew that the words "Don't know" were in the affidavit; and that, under these circumstances, the court should have admitted the plaintiff's letter of September 16, 1948. The difficulty with the plaintiff's contention in this regard is that all that the defendant had done was to attempt to lay a possible foundation for the introduction of the affidavit, but that the defendant never introduced it or offered it in evidence, and that any doubt as to whether the plaintiff knew that the affidavit contained a statement indicating that he did not know the cause of the accident was raised by the plaintiff himself. Under the circumstances, the self-serving letter of September 16, 1948, was, we think, properly excluded. What the plaintiff, in effect, did was to impeach himself—assuming that the affidavit constituted impeachment—and, then, to offset the effect of the impeachment, he sought to introduce in evidence a self-serving declaration contained in a letter written after this case had been commenced. It is elementary that a party cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. Leach & Company, Inc. v. Peirson, 275 U.S. 120, 128, 48 S.Ct. 57, 72 L.Ed. 194, 55 A.L.R. 457; Varley Duplex Magnet Co. v. Ostheimer, 2 Cir., 159 F. 655, 658; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 8. In Affronti v. United States, 8 Cir., 145 F.2d 3, 8, this Court said that whether there should be received in evidence prior consistent statements of a witness impeached by prior inconsistent statements is a matter resting in the sound discretion of the trial court.

**2.**

The plaintiff asserts that "the Court erred by permitting the existence of an apparent attitude that the Court favored defendant by criticism, admonishing and rebuking counsel for plaintiff and allowing to pass without adverse comment the same or similar conduct by counsel for defendant."

We think it is not necessary to state in detail the remarks made by the court to counsel for the plaintiff about which complaint is now made, nor to consider whether they were or were not justified. This entire subject of alleged prejudice resulting from remarks made by a court to counsel was dealt with at length in the case of Goldstein v. United States, 8 Cir., 63 F.2d 609, 612–614, and what was said there need not be repeated. There is nothing in the record which indicates that as between the actual litigants the court was otherwise than fair and impartial. In its charge to the jury, the court said: "From time to time during the course of this trial I have asked questions of the witnesses and I have made observations about the conduct of counsel. Now, you will not infer from any of such proceedings that I was attempting to indicate that I have any opinion as to how your verdict should be in this case. The comments were made by me in the exercise of a judge's inherent power and, indeed, a judge's duty to supervise and direct the trial in accordance with what

the court believes to be the law. We are trying issues. We are not trying lawyers."

The court's instructions were accurate and fair; the issues to be determined by the jury were simple and clear. There is no sound basis for supposing that the jury was influenced in any way by the court's remarks to counsel during the trial.

### 3.

■ A remark of counsel for the defendant, made in his closing argument to the jury, which was objected to by the plaintiff at the trial, was: "Jonnie [the plaintiff] testified that he did not talk to anybody. Nobody, none of the other employees knew that Johnnie was going to claim that he had been thrown off by the brake on that occasion." The objection to that statement, which the court overruled, was: "If your Honor please, I want to object to that, because I was stopped when I was asking those questions during the course of the trial." Counsel for defendant then said: "Just that situation, if your Honor please, Jonnie, as far as we know, and as far as this record indicates, never claimed to anybody, the Frisco, that he was thrown off by this brake until after he had consulted with Mr. Noell [counsel for plaintiff] and filed this suit." No objection was made to this further statement of counsel. We think it was not improper for the defendant's counsel, in his argument, to state why he contended that the claim of the plaintiff that the accident was caused by the brake was an afterthought or a fabrication.

■ The only other remark of counsel for defendant, in his argument to the jury, which was objected to, was: "I am not condemning Jonnie for the things that were done in this case and his value. I am not condemning him. As I told you before, I think Jonnie has been misled. He never came to the Frisco Railroad and told them that he had been hurt because of the fact that—". The plaintiff interposed the following objection: "If your Honor please, I object to that. He never asked him that question. He says he never came to the Frisco Railroad and told them how the accident happened." The objection was overruled, but counsel for defendant pursued that subject no further.

In the final argument to the jury, plaintiff's counsel replied fully to the argument of counsel for defendant. It seems clear to us that there was nothing said in the defendant's argument to the jury which would require or justify a reversal of the judgment appealed from. See and compare, Myres v. United States, 8 Cir., 174 F.2d 329, 338–339, and United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239–240, 60 S.Ct. 811, 84 L.Ed. 1129. It is not conceivable that any statements made in the closing arguments of counsel in this case diverted the minds of the jurors from the simple issue of whether or not the accident was caused by a defective brake.

### 4.

■ There is no basis for the plaintiff's contention that the District Court was required to grant his motion for a new trial. The order denying the plaintiff's motion is not reviewable by this Court. Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 436, and cases cited.

■ Shortly before this case was argued in this Court, the plaintiff filed a motion for a continuance of the case, for a vacation of the judgment appealed from, a remand of the case to the District Court to supplement the record, and for such further proceedings in that court and this Court as might be appropriate. The basis of this motion is that, after the trial and the return of the verdict, the plaintiff ascertained that, during the deliberations of the jury, the foreman brought a magnifying glass to the jury room, and, after securing permission from the court, the jurors used the glass in examining the photographs of the brake which were in evidence. It appears from the motion papers that the foreman sent a note to the judge by the bailiff in charge of the jury, asking for permission to use the glass in examining the exhibits, and that the judge sent back a note reading, "You may do so." It is contended that the court, in sending this note to the jury, in the absence of counsel, committed error, and that the case should be remanded for further proceedings and for the purpose of having

the matter made a part of the record on appeal. For the purposes of this motion, we shall assume that the District Court, over the protest of the plaintiff and without notice to his counsel, sent the note referred to by the plaintiff to the jury. It is our opinion that the court's action in advising the jury that they might use a magnifying glass to examine the exhibits was not erroneous or prejudicial. The motion is overruled.

The judgment appealed from is affirmed.