John Franklin SCHOPPEL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 7866.

United States Court of Appeals
Fourth Circuit.

Argued June 26, 1959.

Decided Sept. 9, 1959.

414

William J. Cocke, Asheville, N. C., for appellant.

A. Andrew Giangreco and Henry St. J. FitzGerald, Asst. U. S. Attys., Alexandria, Va. (John M. Hollis, U. S. Atty., Norfolk, Va., on the brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and THOMSEN, District Judge.

SOBELOFF, Chief Judge.

This appeal from a conviction for murder in the second degree challenges the sufficiency of the evidence and complains of rulings of the District Court and conduct of the United States Attorney in the course of the trial.

The appellant, Schoppel, and one Gomez, inmates of the District of Columbia Reformatory at Lorton, Virginia, were jointly indicted in the United States District Court for the Eastern District of Virginia under 18 U.S.C.A. § 1111 for the murder of Michael Hughes, one of the guards at the reformatory. Each defendant was convicted of murder in the second degree and sentenced to life imprisonment. Gomez did not appeal.

The government's witnesses unfolded the following story: On the afternoon of February 13, 1958, Schoppel, Gomez and several other inmates were in the dayroom of their dormitory, drinking "shutes" a so-called "homebrew" which the prisoners had made. Their appetite for alcohol unappeased, the two accused, and perhaps others, decided to go from the dayroom to the prison barber shop to obtain hair tonic to drink. Instead of proceeding through the door, where a guard was stationed, Gomez and Schoppel took another route to avoid detection. With this objective they climbed up on a table and attempted to kick through a screen in one of the dayroom windows. While they were so engaged, Hughes entered the dayroom and ordered them away from the window. Gomez jumped down from the table and he and Hughes, who was unarmed, became involved in an altercation. Schoppel then jumped to the floor and seized Hughes from behind, locking his arms. While Schoppel held Hughes in this position, Gomez, using a prison-made knife, inflicted fourteen or fifteen cuts and stab wounds on the guard's neck and face. None of the others present interfered and some of the prisoners walked out of the dayroom. During the struggle, which lasted an interval variously estimated at fifteen to twenty minutes, Schoppel's arm also was cut. Schoppel then released Hughes from his grip, and the wounded man sank to the floor. As the defendants were leaving the dayroom Gomez took a chair and struck the guard over the head. The two men then continued on their mission to the barber shop. Hughes died as a result of the wounds and loss of blood.

Not denying that he held Hughes during the attack, Schoppel insisted that his actions were prompted by a desire to aid the guard's effort to ward off Gomez. He also said that while behind Hughes, he locked only one of the guard's arms, instead of both as the government witnesses testified. When asked why, if his intention was to help the guard, he had held him from behind instead of coming between him and Gomez, Schoppel replied that he did so in order to "spin Hughes away." He admitted that if he had time to think he would have come between

them, but claimed that he was "pretty well drunk" and "stunned" by Gomez's attack on Hughes.

### I.   Sufficiency of the Evidence

■■   A principal contention of the appellant is that the Government's version of the facts is so "unreasonable and unrealistic" that no juror could have found him guilty beyond a reasonable doubt,[1] and that, therefore, the District Judge should have granted his Motion for judgment of acquittal.

We are unable to agree that the Government's evidence was so lacking in weight and substance as to require a directed verdict of acquittal. Assuming that the guilt of the appellant was arguable, it was for the jury, not the Judge, to resolve the question. This court has had occasion several times to point out the respective roles of judge and jury in such a situation. Even when in the judge's opinion it is possible for the jury not to be convinced of guilt beyond a reasonable doubt, this does not justify withdrawing the case from the jury's consideration. If, viewing the evidence in the light most favorable to the prosecution, he thinks that reasonable men would be warranted in finding guilt beyond a reasonable doubt, he should submit the case to the jury as the tribunal authorized to decide the issue. Later, in passing on a motion for a new trial, if the judge is satisfied that an injustice has been done he has a wider discretion. See the recent opinion by Judge Haynsworth in Call v. United States, 4 Cir., 1959, 265 F.2d 167, and Judge Soper's full treatment of the subject in Bell v. United States, 4 Cir., 1951, 185 F.2d 302. There was ample evidence here to require sub-

mission to the jury and to warrant the verdict that was found.

### II.   Competency of the Government Witnesses

■■   Schoppel contends that his conviction may not stand because it is based upon the unreliable testimony of his fellow inmates, convicts who were said to be under the influence and control of the Lorton officials when they testified. Counsel appointed by this court to prosecute the appeal has labored with great zeal and traced the history of the common law rule of incompetency of convicted persons as witnesses. He urges that the rule is based upon reason and should be applied here. Doubtless at one time felons, along with certain other classes of potential witnesses, were wholly barred from testifying. Even accused persons without a record of conviction were formerly not permitted to testify in their own behalf. 2 Wigmore on Evidence, § 575 (3rd Ed. 1940). However the common law did not reject the testimony of all prisoners, for the writ of *habeas corpus ad testificandum* was certainly not unknown. 3 Blackstone Comm. 130.

Be this as it may, the trend in recent years has been to allow any person of competent understanding to testify and to let the jury take into account the character of the witness in determining his credibility and the weight to be accorded his testimony. The Supreme Court so held in regard to a convicted felon in Rosen v. United States, 1918, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406, and a similar liberal view of admissibility was announced in respect to the testimony of a wife called as a witness for her husband, abrogating the ancient rule of ex-

---

1.   In particular, counsel argued that it is unreasonable to believe:

   a.   That the defendants would stand on a card table and attempt to kick out the window screen,

   b.   That Hughes, an experienced officer, would allow himself to get in such a predicament,

   c.   That if Schoppel had locked Hughes' arms, an experienced guard like the deceased could easily have escaped,

   d.   That Schoppel would have taken such a chance of being cut by the knife Gomez was wildly stabbing,

   e.   That in the struggle Hughes would not have been moving around and bending forward so that cuts would have been inflicted to other parts of his body,

   f.   That if Schoppel had been holding Hughes, Schoppel's shirt which he was wearing when apprehended later that evening, would not have had Hughes' blood on it.

clusion, Funk v. United States, 1933, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369.

When Rule 26 of the Federal Rules of Criminal Procedure, Title 18 U.S.C.A., was later adopted pursuant to Congressional authorization, it embodied the same doctrine. It provides in part:

> " * * * The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

The Advisory Committee on Rules noted that this rule contemplates the development of a uniform body of rules of evidence for criminal cases in the Federal Courts, and that while based on the common law, it "does not fetter the applicable law of evidence to that originally existing at common law," but that "the law may be modified and adjusted from time to time by judicial decisions." F.R.Cr. Proc., 18 U.S.C.A. p. 255.

For other criminal cases, decided both before and after the adoption of Rule 26, which hold that convicted felons are competent to testify, see: United States v. Segelman, D.C.W.D.Pa.1949, 83 F.Supp. 890; Chapman v. United States, 5 Cir., 1926, 10 F.2d 124; Peace v. United States, 7 Cir., 1921, 278 F. 180; Ammerman v. United States, 8 Cir., 1920, 267 F. 136, 143. Indeed, the practice of calling prisoners as witnesses is so common that the objection is now seldom raised and never upheld in Federal Courts, and in the states too the common law rule has generally been abandoned, except for those convicted of perjury. 2 Wigmore § 519, (3rd Ed. 1940). Even a convicted perjurer may competently testify in a Federal Court. United States v. Margolis, 3 Cir., 1943, 138 F.2d 1002.

If reason and experience are to enter in the resolution of the problem which the appellant raises, there is no room to doubt that in a prosecution for a brutal killing committed in a prison dormitory it would offend common sense to insist on the automatic rejection of the testimony of all available eye witnesses because they are not men of character. It is better to let the witnesses be heard and trust the practical sagacity of the jurors who have been made fully aware of their informants' shortcomings. For an instance where the witness was allowed to testify although serving a sentence in the federal penitentiary at the time of the trial, see Hagan v. United States, 8 Cir., 1925, 9 F.2d 562, 563.

### III. Failure to Exclude One of the Witnesses from the Courtroom

■ The objection to the reception of the testimony of Howard Richardson, a special agent of the Federal Bureau of Investigation, is equally untenable. Richardson testified that Schoppel admitted having changed his shirt after the attack. The appellant claims that this was significant because at the time he was apprehended several hours later, the shirt which he was wearing had only a small amount of blood on it, all of which was his own. The appellant argues that if he had been holding the guard as the Government's witnesses testified, a great amount of Hughes' blood also would have been on the shirt.

It is contended that the District Court erred in permitting Richardson to testify because he had been allowed to be present during the entire trial, while all other witnesses were excluded by the District Judge. Richardson was allowed to remain because he had coordinated the investigation and was assisting the prosecution in presenting certain phases of the testimony and in the introduction of the various exhibits in proper order.

The Sixth Circuit had a case almost identical in this regard in Powell v. United States, 6 Cir., 1953, 208 F.2d 618, 619, certiorari denied 1954, 347 U.S. 961, 74 S.Ct. 710, 98 L.Ed. 1104, rehearing denied 1954, 347 U.S. 979, 74 S.Ct. 789, 98 L.Ed. 1118, certiorari denied 1955, 348 U.S. 939, 75 S.Ct. 357, 99 L.Ed. 736. The court said:

> "Appellant contends that the District Court committed reversible er-

ror in allowing one of the government witnesses to be present in the courtroom during the presentation of the government's case and to testify as a witness after the court had granted a motion to separate the witnesses. This contention has no merit. The exclusion of witnesses from the courtroom is a matter resting in the sound discretion of the trial court and the exercise of that discretion will not be disturbed except in case of clear abuse. Leache v. State, 22 Tex.App. 279, 3 S.W. 539; 53 Am.Jur. 47. No abuse of discretion existed here for it is the uniform rule in this jurisdiction in the conduct of criminal trials that an officer in charge of the case be permitted to sit in the courtroom through the trial and to advise counsel for the government, even though he himself testifies as a witness. Hughes v. State, 126 Tenn. 40, 148 S.W. 543; State v. Ede, 167 Or. 640, 117 P.2d 235."

We think the same rule is applicable in this case, and it was not an abuse of discretion for the District Court to permit Richardson to be called to the witness stand.[2]

### IV. Conduct of the Prosecuting Attorney

■■ A feature of the trial, not objected to below or stressed in the brief but vigorously criticized in oral argument before us, was the prosecuting attorney's disclosing to the jury the fact that certain of his witnesses had been interviewed and made statements to the F.B.I. The contention is that this was the prosecutor's way of bolstering the witness' testimony by indicating to the jury that consistent declarations had been made to the investigators. Repeatedly the U. S. Attorney, upon calling a witness to the stand, proceeded first to establish that a statement had been given to the F.B.I. and then handed it to defense counsel, in the presence of the jury.[3]

Where a cross-examiner has endeavored to discredit a witness by prior inconsistent statements, it is sometimes permissible to offset the damage by showing prior consistent utterances. 4 Wigmore § 1132, 6 Wigmore § 1792 (3rd Ed. 1940). It is not proper, however, in chief to seek corroborative support of a witness by showing that after the event under inquiry and before the trial he made statements to the same effect. See 4 Wigmore § 1124 (3rd Ed. 1940).

The tactic of the government attorney must be condemned, yet in appraising its effect we must regard the record as an entirety. Reviewing the transcript of the proceedings which lasted eleven days, and considering the atmosphere of the trial, we are left with the firm conviction that no actual injury has been done to the defendant's substantial rights. We would be obligated to reverse for such irregularity, even though it was not objected to at the trial, if we had reason to think

2. While Virginia law is not controlling, the local practice is in accord. Title 19, § 219, Code of Virginia provides:
"Exclusion of persons from trial. In the trial of all criminal cases, whether the same be felony or misdemeanor cases, the court may, in its discretion, exclude from the trial any or all persons whose presence is not deemed necessary."
The Supreme Court of Appeals of Virginia has held several times that it was not an abuse of discretion for the trial court to allow police officers and sheriffs to remain in the courtroom after excluding all other witnesses. Campbell v. Commonwealth, 1953, 194 Va. 825, 75 S.E.2d 468, 474; Hampton v. Commonwealth, 1950, 190 Va. 531, 58 S.E.2d 288, 297; Burford v. Commonwealth, 1942, 179 Va. 752, 20 S.E.2d 509, 512. Cf. Plymale v. Commonwealth, 1954, 195 Va. 582, 79 S.E.2d 610, 616 where it was held that the trial court had abused its discretion in refusing to exclude a sheriff, scheduled to testify, and put the jury in charge of a deputy sheriff who was not going to testify.

3. On one occasion the prosecutor sought in direct examination to have a witness refresh his recollection by reading from the statement previously given by him to the F.B.I., but the court sustained an objection to this procedure.

that prejudice resulted. The evidence of Schoppel's guilt is overwhelming. Several eye witnesses said that he held the victim while Gomez inflicted the wounds. Of the fifteen witnesses called and examined by the court at the instance of the defendants nearly all said they did not see the melee or could not determine what Schoppel was doing. Only one or two feebly supported his version that he was trying to assist the victim, and one confirmed the Government's account of the attack. We do not believe that the jury might have acquitted but for the irregularity of which the appellant now complains. On the contrary, the jury might well have returned a verdict of murder in the first degree. It was moved to convict for the lesser offense, apparently crediting to some extent the testimony as to drunkenness. The harmless error rule, rule 52, F.R.Cr.Proc., properly applies.

## V. Leading Questions

■ The contention that judgment should be reversed because many leading questions were persistently asked is without merit. We have considered the appellant's argument and his additional brief on this branch of the case and have closely examined his references to the transcript. In most instances no objection was made by the experienced lawyer employed by Schoppel's family and most of the so-called leading questions were not really leading. They were merely preliminary in character, or assumed uncontroverted facts, or elicited answers not unfavorable to the defense.

## VI. Jurisdiction

■ A further ground for reversal advanced by the appellant is that, although not requested to do so, the court should have charged the jury that in order to convict it must find beyond a reasonable doubt that the crime was committed "on land acquired for the use of the United States and within its concurrent jurisdiction." It is also contended that the Government's proof of this fact was deficient. Where the fact was in no way controverted at the trial, we think that the testimony of the witness Paul F. Pegelow was adequate to prove the court's jurisdiction over the situs of the offense, if indeed the matter was not one for judicial notice. He testified that he has served as Superintendent of the Lorton Reformatory for thirty-four years and that it is a government reservation. We adopt the all sufficient answer returned by Mr. Justice Holmes when the identical point was raised in Holt v. United States, 1910, 218 U.S. 245, 252, 31 S.Ct. 2, 54 L.Ed. 1021, namely, that the United States is not called on to try title in a murder case.

## VII. Charge to the Jury

Finally, the assertion that the court's charge failed to make it clear to the jury that they could render different verdicts with respect to the two defendants, is refuted by a reading of the charge.[4]

We find no reason to disturb the judgment of the District Court, and it is

Affirmed.

---

4. With suitable regard for the separate rights of the two defendants the court told the jury:

"You should consider this case as to each defendant separately, that is, the evidence in respect to each defendant consider separately.

"Your first inquiry is whether both of the defendants, or, if only one of them, then which one of them, killed Michael Francis Hughes, or aided, abetted or counseled in killing him. Of course, if you find that either of the defendants had no part in killing Hughes, and did not aid, abet or counsel in killing him, then you should go no further in consideration of the case in respect to him, but without more, you should find such defendant not guilty.

\* \* \* \* \*

"As you know, it is the contention of the defendant, Schoppel, that he did nothing unlawful, that he had nothing to do with the killing, that he had no thought of attacking the guard, Hughes, that he was simply trying to rescue Hughes, and that he was not to any extent acting in the commission of any crime."