Robert L. PERKINS, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18032.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1963.

Rehearing Denied May 3, 1963.

Harry A. Jackson, San Francisco, Cal., for appellant.

Brockman Adams, U. S. Atty., and Robert C. Williams, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before POPE, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Around the corner from the Seagull Tavern, in Seattle, on the night of November 22, 1960, William "Little Fox" Miller was said to have sold and delivered a quantity of narcotic drugs to Albert "Grey Eyes" Johnson. Robert Lee Perkins was charged, in several counts of a multiple-count indictment, with having aided and abetted Miller in this enterprise. Convicted by a jury on two counts, Perkins appeals from the judgment and sentence thereupon entered.[1]

Appellant raises questions concerning the sufficiency of the evidence, rejection of tendered evidence, correctness of instructions, and asserted Government use of perjured testimony. Several of these questions stem from the circumstances that Perkins was charged as an aider and abettor under 18 U.S.C. § 2(a) and (b), and that, under the Government's theory and evidence, he could not have himself been a direct participant in the actual transfer of the narcotics to Johnson. The facts necessary to be considered in deciding these and other questions, viewed in the light most favorable to the Government, are stated below.

In November, 1960, Johnson, a special employee of the Bureau of Narcotics, and one Carroll R. Gibson, a regularly-employed federal narcotics agent, were working under cover in apprehending violators of the narcotic laws. Perkins knew both Johnson and Gibson and be-

1. The convictions were obtained on Counts XII and XIII, which read as follows:

"Count XII

"That on or about November 22, 1960, at Seattle, Washington, within the Northern Division of the Western District of Washington, ROBERT LEE PERKINS and WILLIAM MATTHEW MILLER, alias Little Fox, did knowingly and unlawfully sell, dispense, and distribute a quantity of narcotic drugs, to wit, approximately one hundred eighty-five (185) milligrams of heroin hydrochloride, not in or from the original stamped package.

"All in violation of Title 18 U.S.C., Sections 2(a) and 2(b) and Title 26 U.S.C., Section 4704(a).

"Count XIII

"That on or about November 22, 1960, at Seattle, Washington, within the Northern Division of the Western District of Washington, ROBERT LEE PERKINS and WILLIAM MATTHEW MILLER, alias Little Fox, did knowingly and unlawfully sell and give away a quantity of narcotic drugs, to wit, approximately one hundred eighty-five (185) milligrams of heroin hydrochloride, not in pursuance of a written order of the person to whom such heroin hydrochloride was sold and given away on a form issued in blank for that purpose by the Secretary of the Treasury or his delegate.

"All in violation of Title 18, U.S.C., Sections 2(a) and 2(b) and Title 26, U.S.C., Section 4705(a)."

lieved them to be "partners" but was apparently unaware of their law enforcement activities.

On the afternoon of November 23, 1960, Perkins met Johnson in Seattle and told Johnson that he would like "to do business" with Gibson. By this, Perkins meant that he would like to sell narcotics to Gibson, and indicated that he had some good "stuff." Johnson replied that he would attempt to get in touch with Gibson.

That night Johnson contacted Gibson by telephone and made arrangements to meet Gibson later in the evening at the Seagull Tavern, near Seventh and Jackson Streets, Seattle. Johnson reached the vicinity first. Without waiting for Gibson, he proceeded to Room 29 in the Jackson Hotel, across the street from the tavern, where he knew Miller resided. Johnson was met at the door by Miller and asked to speak with Perkins. Perkins called from within the room that he would "be down in a few minutes."

Johnson then left the hotel and returned to the tavern where he was joined by Gibson who gave him twenty dollars. About five minutes later Perkins appeared in the tavern doorway and beckoned Johnson to come outside. Gibson accompanied Johnson to the street and asked Perkins, "Where is the stuff?" Perkins replied, "The man will be over in a few minutes." Johnson asked Perkins, "Is the stuff any good?" and Perkins answered, "Yeah, they're up there fixing it."

Miller then came across the street and motioned for Johnson to follow him around the corner of a flower shop which was next door to the Seagull Tavern. Miller then asked Johnson, "What did Perkins say?" Johnson replied, "Perkins say it was all right—give me two caps of stuff." Johnson then gave Miller twenty dollars and received, in exchange, two capsules of heroin. Miller and Perkins then went into the tavern while Johnson walked away with Gibson. No tax stamps were attached to the finger stall containing the heroin and no written order form was used in the transaction.

When Miller was on the witness stand, Perkins sought to elicit testimony that in a prior trial Miller had been acquitted of the crimes alleged in the two counts under which Perkins was convicted as an aider and abettor of Miller.[2] On objection of the Government, the testimony was rejected.

■ On this appeal, apparently proceeding on the assumption that proof was received at the trial that Miller was acquitted, Perkins argues that this established the insufficiency of the evidence to convict him as an aider and abettor. Since, however, the acquittal of Miller is not of record in this case, the point Perkins is really making here, concerning the sufficiency of the evidence, is that he could not be convicted as an aider and abettor unless the Government first proved that Miller had been convicted or at least proved Miller had not been acquitted.

Under the Government's theory of the case, and under the evidence, Perkins could not have been the person who consummated the sale by transferring narcotics to Gibson. The only person who could have done so was Miller. In order to convict Perkins as an aider and abettor it was therefore necessary for the Government to prove that Miller made the transfer, in which event the latter would himself have been guilty of violating 26 U.S.C. §§ 4704(a) and 4705(a). See Hernandez v. United States, 9 Cir., 300 F.2d 114, 123–124.

But, while the guilt of Miller was, under the circumstances, an essential element of the Government's case, it was not incumbent upon the Government to go beyond this and prove that Miller had been convicted of that offense, or to prove that he had not been acquitted.[3]

2. In perfecting an offer of proof in the absence of the jury, Miller so testified.

3. See Gray v. United States, 104 U.S.App. D.C. 153, 260 F.2d 483, 484; Meredith v. United States, 4 Cir., 238 F.2d 535, 542; Colosacco v. United States, 10 Cir., 196 F.2d 165, 167; Rooney v. United States, 9 Cir., 203 F. 928, 933.

Perkins argues further, however, that even if the evidence is not, in this particular, insufficient to support the verdict, proof of the acquittal of Miller was competent evidence that the latter was not guilty of making the transfer, and therefore should not have been rejected.

The evidence concerning the acquittal of Miller was not offered as substantive proof of Miller's innocence, and thus of Perkins' innocence. It was offered only for the limited purpose of establishing that Miller was a credible witness. We are therefore not called upon to determine whether such evidence would have been admissible as substantive proof.

There is presented, however, the question whether evidence of the acquittal of Miller should have been received as bearing upon his credibility as a witness.

At the time counsel for Perkins sought to elicit from Miller that he had been acquitted, there had been no attack upon the credibility of Miller. It is the general rule that until the credibility of a witness has been attacked by evidence pertaining to credibility, evidence tending to establish credibility is inadmissible. Homan v. United States, 8 Cir., 279 F.2d 767, 772. As indicated in the Homan case, the fact that the Government had previously introduced evidence which defendant's witness had or would contravene, does not constitute an attack upon credibility within the meaning of the above rule.

But Perkins argues that there are circumstances here which call for an exception to the rule just stated. It is argued that since Miller was to testify concerning his own conduct on the night in question, the jury would be inclined to discredit his testimony because of his assumed self-interest. But if it could be divulged to the jury that Miller had already been acquitted, the jury would perceive that he had nothing to lose by confessing his own guilt. His protestations of innocence would then carry more weight with the jury.

It is difficult for us to see why the jury would be more likely to conclude that Miller's protestations of innocence were true if they knew he had been acquitted than if, as appellant has contended, they assumed he had been convicted of the crime. In either event the jury would know that Miller had nothing to gain or lose by testifying truthfully that he was innocent.

In any event, we do not believe that the prospect of gaining an advantage of this kind warrants an exception to the rule excluding evidence going to credibility in advance of an attack upon credibility. The possible benefit a defendant may derive from shoring up, in advance, the credibility of a witness, varies from case to case, depending upon the special circumstances presented. If an exception were to be made in Miller's case, a like exception could be claimed in other cases involving different facts. A new complication and uncertainty would be introduced into the law of evidence which would, in our opinion, more than offset any value such an exception might have in achieving a just trial result.

We hold that the evidence concerning the acquittal of Miller was properly excluded.

There is some argument in appellant's opening brief, renewed at the oral argument, that the district court erred by instructing the jury that they were not to concern themselves with the guilt or innocence of any person charged in the indictment other than Perkins.[4] No objection was taken to this instruction as a predicate for appellate review,

4. The instruction in question reads:
"You may and should consider the evidence in this case only with reference to the guilt or innocence of the defendant Perkins with respect to each of those Counts XII, XIII and XIV. Likewise, you must disregard the fact that, in addition to the ones named in these three counts just specified, in the Indictment other persons are named as defendants. You are not concerned with such other persons other than the defendant Perkins who alone as the defendant is on trial before you on each of said three Counts XII, XIII and XIV and no other."

as required by Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A. Nor was the giving of this instruction specified as error in appellant's brief, as required by Rule 18, subd. 2(d) of the Rules of this court, 28 U.S.C.A. Nevertheless, because of the possibility that "plain error" may be involved, we have given consideration to this argument.

The trial judge arranged to send the indictment to the jury room, with those portions of the multiple-count indictment other than counts XII, XIII and XIV physically covered so that the jury would not concern themselves with the other counts.[5] As a further precaution against jury consideration of the other counts, the court gave meticulous instructions to the effect that the jury were only to consider counts XII, XIII and XIV. It was in this connection that the court gave the questioned instruction. In this context it was entirely proper, provided the jury were also instructed as to the necessity of finding Miller guilty before they could convict Perkins. The court did carefully instruct the jury to this effect.[6]

In our opinion the jury was adequately, clearly and fairly instructed that under the Government's theory of the case Perkins could not be found guilty unless the jury found that Miller sold narcotic drugs to Johnson. The court did not err in giving the questioned instruction.

■ Turning to another facet of the appeal, appellant argues that the evidence was insufficient to sustain the verdict because there was no evidence that Perkins participated in the transaction between Miller and Johnson to the extent required to convict him of aiding and abetting.

Our examination of the record convinces us that the evidence was sufficient in this regard.

■ Again without complying with our rule concerning the specification of errors, appellant complains of the failure to give his requested instruction No. 6 dealing with his theory of the case.[7] We nevertheless consider the question.

■ It is reversible error for a trial court to refuse, on request, to instruct as to defendant's theory of the case, where the record contains evidentiary support for the theory. Baker v. United States, 9 Cir., 310 F.2d 924, 930. But we think the trial court was warranted in holding that there was no evidentiary support for the theory that Johnson expressed to Perkins a desire on his or Gibson's behalf to purchase narcotics and all that Perkins did was to inform Johnson of the identity and whereabouts of a possible seller. Therefore it was not error to reject the requested instruction.

■ Finally, appellant argues, the verdict cannot stand because Gibson, one of the Government witnesses, gave testimony which was in conflict with that which he gave at the trial of Miller, and therefore perjured himself.

Four items of inconsistent testimony by Gibson are relied upon, namely: (1) at the Miller trial he testified that there were no lights burning in the flower shop, but at the Perkins trial he testified

---

5. Count XIV has not been referred to previously in this opinion as Perkins was acquitted on that count.

6. This instruction reads:
   "If you have a reasonable doubt that William Matthew Miller sold heroin hydrochloride to Albert Johnson the witness who appeared here, on or about November 22, 1960, as alleged in substance and effect in words which might include the doing of such an act, you must find the defendant not guilty of the offenses charged in Counts XII, XIII and XIV."

7. The requested instruction reads:
   "Statements to one expressing a desire to purchase narcotics concerning the identity and whereabouts of a possible seller constitutes assisting a purchase of narcotics rather than assisting a sale. Defendant has only been charged with assisting sales of narcotics.
   "Accordingly, if you have a reasonable doubt that defendant did anything other than advise Carroll Gibson or Albert Johnson where they might purchase heroin hydrochloride, you must find defendant not guilty on Counts XII, XIII and XIV."

that there was a night light in the window of that shop; (2) at the Miller trial Gibson testified that he was able to see the shadows of Miller and Johnson through the corner plate glass windows of the flower shop, while the transfer of narcotics took place, but at the Perkins trial he made no mention of "shadows," stating that, looking through the corner windows he saw the two men engage in the transaction; (3) at the Miller trial Gibson testified that he "was across the street" from Miller and Johnson, but at the Perkins trial he testified that there was illumination from a filling station across the street; and (4) at the Miller trial Gibson testified that after the alleged sale he and Johnson entered Gibson's car and drove off, but at the Perkins trial he testified that immediately after the sale he and Johnson walked up and down Jackson Street.[8]

It is not represented to us that appellant or his counsel were unaware, at the time of the Perkins trial, that Gibson had given the assertedly inconsistent testimony at the Miller trial. Yet trial counsel for appellant made *no effort to impeach* Gibson by confronting him with his earlier testimony. Nor was the matter brought to the attention of the trial court in connection with appellant's motion for a new trial or in any other manner. However, we are asked to overlook this, presumably under the "plain error" rule, because of the asserted inexperience of trial counsel and because of the "flagrant" nature of the conflict in Gibson's testimony. See Rule 52(b), Federal Rules of Criminal Procedure.

In the interests of adjudicating the point at this time instead of necessitating a collateral proceeding,[9] we consider it on the merits as one possibly involving plain error.

Viewing the four asserted inconsistencies in the light of the whole record, we regard them as at most disclosing minor discrepancies in testimony having no overtones of perjurious intent and involving no substantial prejudice to appellant.

Concerning the first asserted inconsistency, Gibson made it clear in his other testimony that the principal source of light which enabled him to see through the corner windows of the flower shop was the filling station across the street. The presence of the night light would undoubtedly enable Gibson to see articles in the window more clearly than would otherwise be possible. But no one asked him if that light either assisted or hindered him in seeing through the corner windows to observe what was happening on the sidewalk around the corner. Under the circumstances ascertainment of the true facts concerning the presence or absence of the night light in the window would have been of little help to the jury and holds no promise that appellant's case would be aided.

Concerning the second asserted inconsistency, the probable reason Gibson made no mention of "shadows" at the Perkins trial is because he was not asked whether he saw shadows. Moreover, Gibson's reference to "shadows" at the Miller trial, considered in context, in all likelihood meant that he saw only profiles and outlines, not that he saw only the shadows cast by Miller and Johnson.

With regard to the third asserted inconsistency, Gibson did not testify at the Miller trial that he "was across the street from them." What he said was that "(t)here was light from the filling station across the street." This was entirely consistent with the testimony he gave at the Perkins trial. The fourth asserted inconsistency, as to whether Gibson and Johnson walked or immediately drove off after the transaction is too trivial to discuss.

8. The testimony given by Gibson at the Miller trial is not of record on this appeal. It has been brought before us only as an appendix to appellant's opening brief. However, in order to deal with a problem which might otherwise be raised in a collateral proceeding, we will assume that this portion of the Miller trial proceedings is properly before us.

9. The Government has suggested that appellant could raise this question collaterally.

We conclude that there was not such conflict between the testimony given by Gibson at the Miller trial, and at the Perkins trial, as to warrant the setting aside of this judgment.

The judgment is affirmed.