**UNITED STATES of America**

v.

**Lee R. SMITH, Appellant.**

**No. 72–2198.**

United States Court of Appeals, District of Columbia Circuit.

Jan. 10, 1974.

Arthur Lowy (appointed by this court) was on the brief for appellant.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, Warren L. Miller and Joseph B. Valder, Asst. U. S. Attys., were on the brief for appellee.

Before WRIGHT, ROBINSON and MacKINNON, Circuit Judges.

PER CURIAM:

Indicted for first degree murder,[1] appellant was found guilty of the lesser included offense of second degree murder.[2] On appeal he contends that the trial court committed three errors which justify reversal: (1) by refusing to admit, during *appellant's direct examination,* a prior statement he gave to police, (2) in admitting two black and white photographs of the murder scene, and (3) in admitting testimony by the victim's widow that her marriage was trouble-free. We see no necessity for oral argument and affirm the judgment of conviction.

I

The significant facts of the crime are relatively few. Appellant went to the home (an apartment) of his sister-in-law in an attempt to see his wife and to talk to her about her alleged misconduct. While there he got into a fight with his wife in which Boyd (the victim) interceded by telling appellant if he wanted to fight with his wife he should take her upstairs and fight her. His wife then went into the apartment and when appellant attempted to follow her, his sister-in-law, Mrs. Ferguson, attacked him. She hit him with an ash tray, he threatened her with a hawkbill knife and this knife was taken away from him

---

1. D.C.Code § 22–2401.

2. *Id.* § 22–2403.

by Cassandra Greene. Mrs. Greene and a man (Mr. Ed) then put appellant out of the apartment. As appellant left he told Boyd, who had remained outside the apartment during the fight, "I'll get you and I'll be back."[3] Five or ten minutes later appellant knocked on the door of Mrs. Ferguson's apartment, Boyd opened the door and found appellant standing there with a sawed-off shotgun. Appellant then stated, "I am going to kill you, m————— f—————,"[4] and, so saying, shot Boyd,[5] killing him.[6] Appellant claimed he acted in self-defense,[7] claimed he was followed by Boyd to his apartment and that Boyd did not turn back until the appellant got his gun. His story at trial, however, was impeached by a contradictory statement he admitted giving to the police on the night of the shooting.[8]

## II

At the beginning of appellant's case *in chief* he made a proffer to prove through a police officer that shortly after the murder happened appellant made a statement to a police officer that was reduced to writing and signed by appellant. The written statement embodied appellant's description of the killing of

Boyd but was not "a confession or in the nature of a confession."[9] Appellant's counsel described it as being "in the nature of a defense . . ."[10] In substance it asserted that he killed Boyd in self-defense. Appellant proposed to take the stand first and then introduce the written statement through the police officer "for the purpose of corroborating what this man [appellant] is going to state on the stand."[11] To this proffer of the written document the Government objected on the ground that it was a prior consistent statement, hearsay and self-serving and therefore inadmissible *at that time.*[12] The Government indicated its objection went to the reading of the entire statement and that it had no objection to the defense asking the appellant if he gave the police a written statement when he was arrested which recited facts substantially the same as his present testimony.[13] In sustaining the Government's objection the court pointed out the statement was hearsay[14] and that at that stage of the trial the statement would "[c]orroborate an exculpatory statement that is self-serving."[15]

■■ Later in the trial, after appellant had testified, the Government was

3. Tr. at 97, 14, 16.

4. *Id.* at 98–99.

5. *Id.* at 17–18, 99.

6. *Id.* at 28.

7. *Id.* at 200.

8. *Id.* at 251–62.

9. *Id.* at 182.

10. *Id.*

11. *Id.* at 183, 319.

12. *Id.* at 182–87.

13. *Id.* at 186–87.

14. *Id.* at 182.

15. *Id.* at 183, 186. Appellant's theory of admissibility was indistinct and conclusory:
   MR. PARKER: This is not an exculpatory statement. If Your Honor would readit. [sic] It is not hearsay. It is something that was told to Officer Crist and I would ask Your Honor to have this

read into the record and I would ask Your Honor to take a look at it and see that this is a perfectly legal thing to have Officer Crist testify to.
   THE COURT: If it is not a confession or an admission, how could the Officer testify to it?
   MR. PARKER: It is not all one way, if Your Honor please, there is some things in there [sic] . . . the Defendant says that he shot the deceased.
   THE COURT: Then he gives an excuse for it.
   MR. PARKER: He goes ahead and tells the whole story there, if Your Honor please. . . .
   *   *   *   *   *   *
There are certain statements that are in there that certainly are not . . . that are not in terms of exculpatory. In fact, one of them says in there that he said to one of these witnesses to the fact he was going to kick his fanny if he didn't tell him the truth to what happened in reference to him and his wife." (Tr. 183–185)

allowed to refer to the contents of the statement, without admitting it into evidence, to impeach his trial testimony.[16] Thereafter the trial court indicated that it was *now* permissible for appellant to introduce the entire statement into evidence, but defense counsel was of opinion that the court's initial refusal was irreparably prejudicial [17] and he refused to offer the statement for admission into evidence. We find that the court's rulings with respect to the proffer, and the use of the written statement in cross-examination during the trial, followed well established principles of trial procedures and were completely proper in all respects.

■ Judge Sobeloff pointed out in *Schoppel v. United States* that:

> It is not proper . . . in chief to seek corroborative support of a witness by showing that after the event under inquiry and before the trial he made statements to the same effect.

270 F.2d 413, 417 (4th Cir. 1959). After so stating, the opinion criticized the Government's conduct of the trial in repeatedly eliciting testimony that certain of its witnesses had been interviewed and given statements to the F.B.I., and then handing the statement to defense counsel in the presence of the jury and thereby creating an aura of corroboration by a prior statement.[18] Our prior decisions also indicate that when a witness' testimony has not been impeached,

his prior extra-judicial utterances are ordinarily inadmissible.[19] The reason for this rule was stated by Justice Story as far back as 1836:

> [The witness'] testimony under oath is better evidence than his confirmatory declarations not under oath, and the repetition of his assertions does not carry his credibility further, if so far, as his oath.

*Ellicott v. Pearl*, 35 U.S. (10 Pet.) 412, 439, 9 L.Ed. 475 (1836). Modern legal scholars are also in accord. 4 Wigmore, Evidence § 1124 (Chadbourn rev. 1972);[20] McCormick, Evidence § 49 (2d ed. 1972).

■ One general principle is that in the absence of an attack upon credibility no sustaining evidence is allowed.

*McCormick, id.* (footnote omitted).

The Government summarizes appellant's contentions as a claim that he was prejudiced because

> his credibility was undermined because, since the statement was not admitted during his direct testimony, "[t]he jury may well have inferred . . . that he was afraid to discuss it . . . ." (Appellant's Brief at 16–17); "the refusal to admit the statement when it was requested by the defendant made him appear unnecessarily inconsistent and subjected him to prejudicial lines of questioning" (*id.* at 17); and "the prosecu-

16. *Id.* at 251–55.

17. *Id.* at 315–20.

18. 270 F.2d at 417.

19. Coltrane v. United States, 135 U.S.App. D.C. 295, 418 F.2d 1131 (1969) (Robinson, J.); Gregory v. United States, 125 U.S. App.D.C. 140, 369 F.2d 185 (1966) (Wright, J.); Johnson v. United States, 121 U.S. App.D.C. 19, 347 F.2d 803 (1965) (Wright, J.); Baber v. United States, 116 U.S.App. D.C. 358, 324 F.2d 390 (1963) (Washington, J.), cert. denied, 376 U.S. 972, 84 S.Ct. 1139, 12 L.Ed.2d 86 (1964).

    Judge Wright's opinion in Johnson v. United States, *supra*, states:

    It is a well known rule of evidence, applicable in criminal and civil cases alike,

that prior consistent statements may not be used to support one's own unimpeached witness.
121 U.S.App.D.C. at 21–22, 347 F.2d at 805–806 (footnote omitted).

20. When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence . . . is ordinarily rejected.
4 Wigmore, Evidence § 1124 (Chadbourn rev. 1972) (footnotes omitted).

tor asked leading questions for which there was no basis" (*id.* at 18) (appellant does not support this contention by any citation to the record). These assertions are unsubstantiated and speculative. They are indeed no more than an example of the fact that "[t]he prosecutor's course was a classic example of the proper purposes of cross-examination." (Willie) Jones v. United States, *supra,* note 16, 111 U.S.App.D.C. 276 at 280, 296 F.2d 398 at 402.

Brief for Appellee at 15.

■ The substance of appellant's claim is a contention that he should have been allowed to impeach himself with the statement and then rehabilitate his own impeached testimony. But appellant could not use an impeachment of himself as a foundation for the admission of otherwise inadmissible testimony. His whole theory in this respect is exploded by Judge Sanborn's well-reasoned opinion in Throckmorton v. St. Louis-San Francisco Ry., 179 F.2d 165 (8th Cir.), cert. denied, 339 U.S. 944, 70 S.Ct. 797, 94 L.Ed. 1359 (1950), which is cited with approval by Judge Wright in Gregory v. United States, 125 U.S.App.D.C. 140, 146 n. 13, 369 F.2d 185, 191 n. 13 (1966). *Throckmorton* involved an action for injuries in which plaintiff asserted in his direct testimony that his injuries were the result of a de-

fective brake on one of the defendant's railroad cars. In an affidavit executed shortly after the accident he had stated that he did not know what had caused the accident. He succeeded in entering into evidence a letter from an insurance company inquiring into what had caused the accident and citing the fact that he had not answered this question in the previously executed affidavit. He then sought to introduce his reply letter in which he asserted that the cause of the accident was the defective brake. The trial court excluded this letter, and, in upholding the exclusion, the opinion by Judge Sanborn stated:

> What the plaintiff, in effect, did was to impeach himself—assuming that the affidavit constituted impeachment —and, then, to offset the effect of the impeachment, he sought to introduce in evidence a self-serving declaration contained in a letter written after this case had been commenced. It is elementary that a party cannot make evidence for himself by writing a letter containing the statements that he wishes to prove.

Throckmorton v. St. Louis-San Francisco Ry., *supra,* 179 F.2d at 169. Part and parcel of this rule is the corollary principle that a prior consistent statement (here the written statement of appellant) may be introduced into evidence to rehabilitate a witness.[21] It was this

---

[21]. United States v. Alexander, 139 U.S.App.D.C. 163, 164, 430 F.2d 904, 905 (1970) ; Perkins v. United States, 315 F.2d 120, 123 (9th Cir.), cert. denied, 375 U.S. 916, 84 S.Ct. 201, 11 L.Ed.2d 155 (1963) ; Throckmorton v. St. Louis-San Francisco Ry., 179 F.2d 165 (8th Cir.), cert. denied, 339 U.S. 944, 70 S.Ct. 797, 94 L.Ed. 1359 (1950) ; Paul T. Stone, Inc. v. Metzler, 68 App.D.C. 359, 98 F.2d 231 (1938).

> The fact that the Government had previously introduced evidence which defendan[t] . . . would contravene, does not constitute an attack upon credibility within the meaning of the above rule.

Perkins v. United States, *supra,* 315 F.2d at 123. *Cf.* United States v. Sherman, 171 F.2d 619 (2d Cir. 1948), cert. denied, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738 (1949),

holding that when a witness at trial is impeached through a prior inconsistent written statement, it is improper to admit a second written statement, given *subsequently* to the first, to corroborate his trial testimony and thereby attempt to break the force of the impeachment. In rejecting the prior consistent statement under such circumstances, Judge Learned Hand pointed out:

> [S]uch a statement is as incompetent when the witness has been impeached by an inconsistent statement, as when he has not been.

*Id.* at 622. Ellicott v. Pearl, 35 U.S. (10 Pet.) 412, 439, 9 L.Ed. 475 (1836) and Conrad v. Griffey, 52 U.S. (11 How.) 480, 13 L.Ed. 779 (1850) are cited as authority. The latter case sets forth the development of the rule.

rule that the court followed when it ruled late in the trial that the statement was properly admissible at that time.

■ The three cases cited by appellant[22] in support of his contention all involved instances where admissions of the defendant were introduced by the Government as part of its case in chief and the cases are thus inapposite on their facts. And it is patently frivolous further to assert, as appellant does, that he was denied his Sixth Amendment right to assistance of counsel because the court's refusal to admit appellant's statement at the start of his testimony made it impossible for him to present his case "in the best light legally [*sic*] possible."[23]

### III

■ The trial court also acted well within its discretion in admitting two black and white photographs of the inside of the house showing where the victim was standing when he was shot and where he fell.[24] These pictures show a large rug bearing a dark gray stain identified as blood.[25] Most murder trials necessarily involved the admission of some such evidence. We have recognized that trial courts in murder cases may admit photographs of the body so long as they have some probative value

and are not intended solely to inflame the jury.[26] Photographs of the murder scene, absent the body, should not be judged by a more rigorous standard, since such photographs may have positive probative value. The photographs here were clearly probative of the place where the victim was shot, and were thus material on the issues in the case. We have examined the photographs, find them relatively innocuous and hold them to be clearly admissible under our prior decisions.[27]

### IV

■ Appellant also objects to the admission of testimony by the decedent's wife as to the quality of her marriage, *i. e.*, that the victim was a "loyal devoted type of husband," that her marriage during the period "was good" and they "were having no problems."[28] This testimony had some relevance, as appellant admits,[29] as to the accuracy of appellant's suspicions of his wife and the victim. If appellant did not want the testimony admitted into evidence, he should have objected to it at trial.[30] It is obviously too late now, since it is clear that its admission did not constitute plain error under Fed.R.Crim.P. 52(b). The rule requiring objection at trial is not lightly to be set aside and thus per-

22. Jones v. United States, 111 U.S.App.D.C. 276, 296 F.2d 398 (en banc 1961), cert. denied, 370 U.S. 913, 82 S.Ct. 1260, 8 L.Ed.2d 406 (1962) ; Opper v. United States, 348 U. S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) ; Ziang Sun Wan v. United States, 53 App.D. C. 250, 289 F. 908 (1923), rev'd, 266 U.S. 1, 45 S.Ct. 1, 69 L.Ed. 131 (1924).

23. Brief for Appellant at 20.

24. Tr. at 23–24.

25. *Id.* at 23.

26. Harried v. United States, 128 U.S.App.D. C. 330, 336, 389 F.2d 281, 287 (1967).

27. *See* United States v. Hurt, 155 U.S.App. D.C. 217, 223, 476 F.2d 1164, 1170 (1973) ;

Harried v. United States, 128 U.S.App.D.C. 330, 336, 389 F.2d 281, 287 (1967). *See also* United States v. Cartano, 420 F.2d 362, 364–365 (1st Cir.), cert. denied, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970) ; Talbot v. Nelson, 390 F.2d 801, 803 (9th Cir.), cert. denied, 393 U.S. 868, 89 S.Ct. 153, 21 L.Ed.2d 136 (1968) ; Maxwell v. United States, 368 F.2d 735, 740 (9th Cir. 1966) ; Rivers v. United States, 270 F.2d 435, 437–438 (9th Cir. 1959), cert. denied, 362 U.S. 920, 80 S.C. 674, 4 L.Ed.2d 740 (1960).

28. Tr. at 175.

29. Brief for Appellant at 40.

30. *See* Tr. at 175.

mit a defendant to let in evidence at trial as a hedge to insure reversal on an appeal if his client is convicted.[31]

Affirmed.

---

31. We likewise see no merit in appellant's claims that the court's refusal to permit him to introduce his post-arrest statement at the start of his case in chief deprived him of any due process right to present his own case; or that he was denied due process by the charge to the jury that they could consider that the defendant had an interest in the outcome of the trial; by his arrest immediately following the murder which made it impossible to take pictures where a trail of blood might have been found; and by the prosecutor being the first to talk to a particular defense witness after he arrived in court and because the defense was not given a record of their conversation. Defendant was permitted to present his case according to the applicable rules of law, the part of the charge to the jury to which appellant objects was proper and the other claims are ingenious, but show no improper prejudice and are without merit.